NO. 07-02-0029-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 28, 2003
_____

JAMES L. DUNN, III, D.D.S. AND WIFE, DIANE GAY DUNN,

Appellants

v.

BANK-TEC SOUTH, a/k/a SDL OF TEXAS, INC., SDL, INC.,
SKILCRAFT SECURITY EQUIPMENT CORPORATION, CITY
NATIONAL BANK OF KILGORE AND GREGORY RICE,

Appellees
_____

FROM THE 172nd DISTRICT COURT OF JEFFERSON COUNTY;

NO. E-160,678; HON. DONALD J. FLOYD, PRESIDING
_____

***Opinion***
_____

Before QUINN and REAVIS, JJ., and BOYD, S.J.[1]

Appellants James L. Dunn, III, D.D.S. (Dunn), and Diane Gay Dunn (Mrs. Dunn),

collectively referred to as "the Dunns," appeal from a judgment rendered in their favor in

a lawsuit brought by them for personal injuries sustained by Dunn when a mobile teller unit

at a drive-in banking facility of City National Bank of Kilgore (CNB) closed on his arm.  The

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.  TEX. GOV'T
CODE ANN. §75.002(a)(1) (Vernon Supp. 2003).

12 issues asserted by the Dunns (many with conclusory sub-issues) implicate the sufficiency of the evidence and the trial court's decision to grant a summary judgment, to deny a new trial, to refuse various jury instructions, to exclude testimony of a purported expert, and to admit a surveillance tape. In one cross-issue, appellees raise an issue concerning venue and ask that we consider it only if the cause is remanded. We affirm the judgment.

### Background

On July 21, 1997, Dunn attempted to make a deposit with CNB at one of its drive-through facilities. The unit initially failed to transmit his money, however. Subsequent efforts also went for naught. Thus, he attempted to remove the deposit, and as he did, the unit closed on his arm. This resulted in him suffering injury that eventually developed into reflex sympathetic dystrophy (RSD). The latter purportedly affected his ability to practice dentistry.

On April 8, 1999, the Dunns sued CNB, Skilcraft Security Equipment Corporation (the designer and manufacturer of the teller unit), Bank-Tec South, and SDL, Inc. Later, they joined Gregory Rice, a district manager for Bank-Tec, as a defendant.

Claims of negligence were asserted against all the defendants, and Deceptive Trade Practices Act (DTPA) claims were asserted against Skilcraft and Bank-Tec. The Dunns subsequently amended their pleading to also allege fraud, breach of warranty, and gross negligence.

Prior to trial, the defendants stipulated to "liability" in general. However, none admitted to committing the acts underlying any particular cause of action alleged by the

2

Dunns. Thereafter, the case was submitted to the jury only on the issue of damages. The jury awarded Dunn $125,000 for physical pain and mental anguish, loss of earning capacity, physical impairment, and past medical care, $75,000 as future damages, and $90,000 for the loss related to his dental practice. Mrs. Dunn was awarded $60,000 for past mental anguish but no damages for loss of household services, consortium, or future mental anguish. Thereafter, the trial court entered judgment on the verdict.

### Issue One — Granting of Summary Judgment

In their first issue, the Dunns assert that the trial court

> abused its discretion and violated [their] constitutional right to due process and the express provisions of the Texas Rules of Civil Procedure when it severely restricted [their] preparation of their case, and then allowed Appellees to file and it granted CNB's 'no evidence' summary judgment on the day the case was called to trial as to [their] gross negligence/malice cause of action.

We overrule the issue for the following reasons.

First, the Dunns did not present their due process claim to the trial court prior to or at the summary judgment hearing. Thus, it was not preserved for review. *Sterling v. Alexander,* 99 S.W.3d 793, 797 (Tex. App.–Houston [14th Dist.] 2003, pet. denied). Nevertheless, and assuming *arguendo* that the claim was preserved, we note that if a party attends and participates at a summary judgment hearing, then due process has been satisfied. *Rios v. Texas Bank,* 948 S.W.2d 30, 33 (Tex. App.–Houston [14th Dist.] 1997, no writ). This is true even though it received less than the required notice of the hearing. *Id.* The Dunns appeared at and participated in the hearing at bar.

Second, to the extent that the Dunns contend that they were denied adequate time to conduct discovery on their malice claim prior to the time the trial court entertained the

3

no-evidence motion for summary judgment, we note the claim was first raised by them after the discovery period had ended and they announced ready for trial. Furthermore, they did not file a written, verified motion for continuance nor an affidavit explaining their need for more time. Thus, they did not preserve their complaint. *Tenneco, Inc. v. Enterprise Products Co.,* 925 S.W.2d 640, 647 (Tex. 1996) (stating that when a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance); *Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301, 304 (Tex. App.–Houston [1st Dist.] 1999, pet. denied) (holding that because the non-movant did not file a sworn motion for continuance or an affidavit explaining why additional time was needed, the trial court did not err in ruling on the motion for summary judgment).

Third, to the extent that the Dunns contend they had no opportunity to file a written response to the no-evidence motion for summary judgment, we note that they did present evidence to the court at the summary judgment hearing. This evidence was sufficient to cause the trial court to deny the no-evidence motions filed by each defendant other than CNB. Moreover, nothing is said of how they were harmed by the procedure when it came to the trial court granting CNB's motion. Indeed, its motion (along with those of the other defendants) was filed and heard immediately before trial was to begin, that is, at a time when the Dunns should have had and obviously had their evidence ready for presentation at trial. Additionally, they do not suggest that any particular witness or bit of evidence was unavailable at the time. Nor do they complain about lacking the opportunity to defend against the motion for they obviously appeared at the hearing and tendered evidence. In

4

short, the procedure utilized by the trial court may be something we would not necessarily recommend. The Dunns, nevertheless, have not shown that it probably caused the rendition of an improper judgment. TEX. R. APP. P . 44.1(a)(1) (requiring the reviewing court to conclude that the error probably caused the rendition of an improper judgment before the judgment can be reversed); *Martin v. Martin, Martin, & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998) (applying a harm analysis to error arising in a summary judgment proceeding); *Goode v. Shoukfeh*, 915 S.W.2d 666, 673 (Tex. App.–Amarillo 1996), *aff'd*, 943 S.W.2d 441 (Tex. 1997) (requiring the appellant to prove it was harmed by the purported error). So, we find no basis for reversing the judgment on this ground.

### Issue Two — Summary Judgment on the DTPA Claim

Next, the Dunns assert that the trial court

abused its discretion and violated [their] constitutional right to due process and the express provisions of the Texas Rules of Civil Procedure when it severely restricted [their] preparation of their case, then heard and granted Appellees' summary judgment on the day the case was called to trial as to the Dunns' DTPA cause of action, without any notice or opportunity to respond in writing.

We overrule the issue.

In this issue, the Dunns do not explain why they believe they were denied due process or how the trial court violated the "express provisions of the Texas Rules of Civil Procedure." Rather, the sum and substance of their argument concerns whether the trial court erred in denying the claim arising under the DTPA. Additionally, summary judgment was sought on the basis that the Act excluded claims for personal injuries and that Dunn

5

was not a consumer. The trial court expressly agreed with the movants *on both grounds* and granted them summary judgment. On appeal, however, the Dunns address only the contention that the Act excludes claims for personal injuries. They do not address whether the trial court also erred in concluding that Dunn was not a consumer. Having failed to show why neither ground supports the trial court's decision, they failed to carry their burden of proof on appeal. *Strather v. Dolgencorp of Texas, Inc.*, 96 S.W.3d 420, 423 (Tex. App.–Texarkana 2002, no pet.).

## Issue Three — Jury Argument

Next, the Dunns complain about allegedly improper jury argument. We overrule the issue.

As stated long ago by the Texas Supreme Court, there exist two types of improper jury argument, that which is curable and that which is not. *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 333 (Tex. 1968). If the argument falls within the former category, one must object to it and request the trial court to instruct the jury to disregard it. *Id.* Furthermore, the objection and request for instruction must be made at the time the argument is uttered. *Standard Fire Ins. Co.v. Reese*, 584 S.W.2d 835, 840-41 (Tex. 1979) (holding that the objection was waived because it was not made at the time of the argument). On the other hand, if argument falls within the category of the incurable, no objection need be made. *Otis Elevator Co. v. Wood*, 436 S.W.2d at 333; *Macias v. Ramos*, 917 S.W.2d 371, 375 (Tex. App.–San Antonio 1996, no writ). Yet, it must be remembered that improper argument rarely falls within the latter category. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839-40 (Tex. 1979); *Busse v. Pacific Cattle Feeding Fund No. 1, Ltd.*, 896

S.W.2d 807, 816 (Tex. App.–Texarkana 1995, writ denied). Indeed, to be incurable, the argument must be so inflammatory as to strike at the heart of the adversarial process. *Macias v. Ramos*, 917 S.W.2d at 375. Or, it must either appeal to fundamental prejudices, *id.*, or be sufficiently prejudicial to cause a juror of ordinary intelligence to agree to a verdict contrary to one which he would have agreed to but for the argument. *Beavers v. Northrop Worldwide Aircraft Serv., Inc.*, 821 S.W.2d 669, 680 (Tex. App.–Amarillo 1991, writ denied). Finally, should the complainant believe the comments to be improper and incurable, then it is encumbent upon him to explain the basis for his belief or, at least, why the tenor of the arguments excuse one from timely objecting. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (concerning improper judicial comments and rejecting the complaint because the appellant failed to explain how any comments made were incurable or excused the failure to preserve error).

With the foregoing in mind, we reviewed the purported instances of improper argument. They fell into the following categories:  1) purported attack upon the credibility of Dunn and his counsel, 2) comment about the Dunns failing to call certain witnesses at trial, 3) reference to the Dunns residing in a county other than Beaumont, and 4) reference to job opportunities appearing in a newspaper. Furthermore, and except in one instance, none were followed by a *contemporaneous* objection as required by *Standard Fire Insurance*.[2] And, regarding that to which objection was uttered, the Dunns failed to ask the

---

[2]The Dunns objected to the evidence and moved for a mistrial after the jury retired to deliberate. By that time, the trial court was denied the opportunity to ameliorate any potential harm via an instruction. And, it is for this reason (the opportunity to ameliorate the harm, if any) that a contemporaneous objection and request for an instruction is necessary.

7

trial court for an instruction to disregard. So, unless the supposed prejudice accompanying each argument is deemed incurable, the complaints were not preserved.

Next, when the supposed improprieties are viewed in context and in relation to the evidence and theories being propounded, we conclude that none of the examples of allegedly improper argument were so inflammatory as to strike at the heart of the adversarial process. None were so prejudicial as to cause a juror of ordinary intelligence to agree to a verdict contrary to one which he would have agreed to but for the argument.[3] Moreover, the Dunns provided the court with no explanation as to why the prejudice, if any, arising from the comments at issue was incurable. They simply concluded that it was. For these reasons, we conclude that the Dunns neither preserved the alleged error nor carried their burden on appeal.[4]

### *Issues Four and Five — Sufficiency of the Evidence*

Next, the Dunns attack the jury's determination to award Mrs. Dunn no damages for loss of consortium and household services from her husband and for future mental anguish. She was awarded, however, $60,000 for past mental anguish. These findings, according to the Dunns, are against the great weight of the evidence and, therefore,

---

[3]Indeed, the comments regarding Dunn's credibility were founded upon evidence appearing of record placing into issue his credibility. Also, while it may be improper to attack the integrity of opposing counsel, that has been held as something subject to cure via an appropriate instruction by the trial court. *Beavers v. Northrop Worldwide Aircraft Serv., Inc.*, 821 S.W.2d 669, 680 (Tex. App.—Amarillo 1991, writ denied).

[4]Under this issue, the Dunns also interject complaint regarding the admission of allegedly improper character evidence. We reviewed the record references they cited and found no objections accompanying the presentation of that evidence at trial. And, to the extent that those matters may have been the subject of a prior motion in limine, that did not excuse them from objecting. *Norfolk Southern Ry. Co. v. Bailey,* 92 S.W.3d 577, 583 (Tex. App.—Austin 2002, no pet.) (holding that a motion in limine does not relieve the party from objecting to the evidence when tendered at trial). Thus, the objections were waived.

manifestly unjust. So too do they argue that they proved themselves entitled to damages as a matter of law. We overrule the issues.

a. *Standard of Review*

When a party attacks a jury finding concerning an issue or issues upon which he had the burden of proof, he must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Waltrip v. Bilbon Corp.*, 38 S.W.3d 873, 881 (Tex. App.–Beaumont 2001, pet. denied). This obligates us to first examine the record to determine if there is some evidence to support the finding. *Waltrip v. Bilbon Corp.*, 38 S.W.3d at 881. If there exists some evidence, then we must decide, in light of the entire record, whether the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, or whether the great preponderance of the evidence supports its nonexistence. *Id.*; *accord Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). However, caution must be taken in this regard for it must be remembered that jurors are free to believe or disbelieve any witness, regardless of whether the witness' testimony is contradicted. *Lance v. USAA, Inc. Co.*, 934 S.W.2d 427, 429 (Tex. App.–Waco 1996, no writ). So too may they have simply decided that they were not convinced of the bona fides of the plaintiff's case by a preponderance of the evidence. *Waltrip v. Bilbon Corp.*, 38 S.W.3d at 881. Consequently, the standard of review prohibits us from reversing the judgment simply because we may conclude that the evidence merely preponderates toward an answer more favorable to the appellant. *Id.* Instead, only when the great weight

9

of the evidence supports a contrary result may we intervene. *Id.* With this said, we turn to the allegations before us.

     *b.       Lost Consortium and Household Services*

It is beyond dispute that one spouse's claim for lost consortium and household services is derivative in nature. That is, a spouse seeking recovery under those theories must prove that his or her counterpart suffered serious, permanent, and disabling injuries. *Browning Ferris Indus., Inc. v. Lieck,* 881 S.W.2d 288, 294 (Tex. 1994). So too must it link the existence of those injuries to the diminished or missing affection, solace, companionship, society, assistance, and sexual relations contemplated within the theory of consortium. *See Wal-Mart Stores, Inc. v. Alexander,* 868 S.W.3d 322, 328 (Tex. 1993) (defining spousal consortium as the mutual right of the husband and wife to that affection, solace, comfort, companionship, society, assistance, and sexual relations necessary to a successful marriage).

Next, the record before us contains conflicting evidence as to the severity of Dunn's injury and its effect on his life and that of his wife. The doctor did testify that he was in considerable pain, unable to get or hold a job, and limited in his ability to use his arm. However, other evidence illustrates that he was originally released from the hospital with only the instructions to use ice and ibuprofen, and he did not demonstrate many of the symptoms of the ailment about which he now complains, RSD. Also, a videotape presented to the jury showed him using his arm in everyday activities. So too did some evidence indicate that he suffered from a back injury, depression, and sleeplessness before the events underlying his suit occurred. Thus, some evidence exists illustrating

Dunn's injuries to be less than permanent, serious and disabling. Furthermore, the evidence is not greatly outweighed by that which contradicts it.

Next, and to the extent Mrs. Dunn testified that her husband was unable to do yard work, that he used to spend 14 to 15 hours a week helping her around the house and now can only spend a couple hours doing so, that his injury affected their ability to travel together, that he is more isolated and does not socialize, and that he is dysfunctional in terms of physical affection and his ability to nurture her, she is hardly the disinterested witness. Moreover, the ailments she described are inherently subjective in nature. *See Hyler v. Boytor*, 823 S.W.2d 425, 427 (Tex. App.--Houston [1st Dist.] 1992, no writ) (describing tiredness, irritability, dizziness, loss of concentration, among other things, as subjective injuries). And, because they are subjective in nature, whether the jury believes them to exist depends upon whether they view the witness as credible. *Id.* Given this, we are less likely to deem a zero damage finding as manifestly unjust. *Id.* at 427-28.

In short, the evidence before the jury was contradictory and described subjective damage. Thus, we cannot say that the refusal to award her any damages for lost consortium and household service was against the great weight of the evidence and, therefore, manifestly unjust. And, the Dunns' contention that the defendants' admission of liability entitled them (the Dunns) to damages as a matter of law does not compel a different result. Such an argument smacks of the 'zero damages rule," which has since been rejected. *See Srite v. Owens-Illinois, Inc.*, 870 S.W.2d 556, 559 (Tex. App.–Houston [1st Dist.] 1993, *rev'd in part on other grounds*, 897 S.W.2d 765 (Tex. 1995) (rejecting the theory).

11

*c.* *Mental Anguish*

As to the jury's decision to deny Mrs. Dunn damages for future mental anguish, the Dunns recognized in their brief that "future mental anguish [is] necessarily speculative and within the province of the jury to decide." Furthermore, the future mental anguish involved here was exemplified by such things as worry about whether Dunn's condition would worsen and require additional medication and surgery, worry about their economic ability to care for themselves in the future and pay debt, and nightmares. Again, these concerns are inherently subjective and their existence dependent upon whether the jurors found Mrs. Dunn credible, and because of that, our authority to reverse is quite limited. *Hyler v. Boytor*, *supra*.

Furthermore, the matters described liken to general worries and anxieties, and, according to our Supreme Court, more is needed than mere worry, anxiety, embarrassment, vexation, or anger to obtain damages for mental anguish. *Saenz v. Fidelity & Guaranty Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex. 1996). Therefore, we again cannot say that the jury's refusal to award her damages is manifestly unjust. Nor can we say that Mrs. Dunn proved she was entitled to damages as a matter of law.

### Issues Six, Seven and Eight — Purported Charge Error

Through issues six, seven, and eight, the Dunns complain about the trial court's 1) refusal to instruct the jury on spoliation, 2) refusal to submit "'malice' and accompanying exemplary damages questions to the jury", and 3) instruction to the jury to exclude from its calculation of damages recovery for "any condition not resulting from the occurrence in question." We overrule the issues.

*a.    Spoliation Instruction*

The Dunns initially contend that they were entitled to a spoliation instruction *viz* surveillance videos taken of Dunn. The instruction they sought read as follows:

> You are instructed that *intentional spoliation or destruction* of evidence by City National Bank . . . and relevant to this case raises a presumption that the evidence would have been unfavorable to City National Bank . . . ."

(Emphasis added). In arguing the point, the Dunns cite us to no evidence illustrating that the surveillance videos in question were lost or destroyed, *Brumfield v. Exxon Corp.*, 63 S.W.3d 912, 919 n.3 (Tex. App.–Houston [14th Dist.] 2002, pet denied) (stating that spoliation is the improper destruction of evidence), or that their loss or destruction was intentional. Nor did our review of the record disclose any such evidence. Indeed, it is clear that the videos in question existed at the time of trial and were offered to the Dunns for perusal. Thus, we cannot say that the trial court abused its discretion in denying the aforementioned instruction as it pertained to the surveillance videos.

As to the video made by CNB and depicting Dunn's entanglement in the teller machine, its location was unknown. Yet, though called a video, the film actually contained a series of still shots capturing various images over a certain time period. The images were of different locations at the bank. Furthermore, a bank officer obtained the video, had copies made of each still shot in which Dunn appeared, and gave the stills and video to the bank's legal counsel. A copy of those very same still photos were then given to the Dunns and admitted into evidence at trial. And, while the Dunns contend that the actual video was either destroyed or lost, they have cited us to no evidence indicating who destroyed or lost it or the circumstances surrounding its actual destruction or loss. Nor did

13

our review of the record uncover any. Instead, we simply found evidence indicating that its location at the time of trial was unknown. Given this utter lack of evidence regarding the circumstances surrounding the video's disappearance, the trial court had no basis upon which to reasonably infer, much less conclude, that its destruction was *intentional*. So, we cannot say that it erred by refusing to submit an instruction telling the jurors that the *intentional* destruction of evidence by the bank entitled them to presume that the evidence would have been unfavorable to the bank. *See Roy v. Howard-Glendale Funeral Home,* 820 S.W.2d 844, 846 (Tex. App.–Houston [1ˢᵗ Dist.] 1991, writ denied) (holding that a party is entitled to an issue if its submission is supported by the evidence of record).

     *b.     Instruction Concerning Recovery for Other Pre-Existing Conditions*

Next, the Dunns contend that the trial court erred by instructing the jury not to "include any amount for any condition not resulting from the occurrence in question." We disagree for two reasons. First, the issue was inadequately briefed. It consists of nothing more than conclusion bereft of analysis or explanation. *See Wilkinson v. Dallas/Fort Worth Intl. Airport Bd.,* 54 S.W.3d 1, 18 (Tex. App.–Dallas 2001, pet. denied) (holding that an issue bereft of analysis or explanation presents nothing for review).

Second, and assuming *arguendo* that the issue was preserved, we note that there appears of record evidence illustrating that Dunn not only suffered from a back ailment but also from bouts with depression and sleeplessness before the episode with the teller machine. So, to the extent that he claimed at trial to have a physical disability that impaired his lifestyle, to suffer from depression, and to have problems sleeping, the instruction was supported by the evidence. The instruction also helped the jury to assess

which injuries were subject to recompense and which were not. Consequently, the trial court did not abuse its discretion in submitting the instruction under the circumstances. *Guerrero v. Sanders,* 846 S.W.2d 354, 358 (Tex. App.–Fort Worth 1992, no writ) (stating that the trial court did not err in submitting an identical instruction since it simply informed the jury to limit its award to those damages resulting from the accident at issue).

### c.      Instruction on Malice

Next, the Dunns assert that the trial court erred by refusing to submit an instruction on malice when there existed evidence of record to support its submission. We disagree for several reasons.

First, the Dunns proffer no issue expressly attacking the trial court's decision to direct a verdict on the matter of malice or gross negligence. Nor did they provide us with authority or analysis expressly addressing the directed verdict in any of their other issues. At most, they simply concluded it was error for the trial court to grant such a verdict. That does not satisfy Texas Rule of Appellate Procedure 38.1(h). The latter, as previously mentioned, obligates the appellant to provide the reviewing court not only with citation to authority and the record but also substantive analysis. *See Sunnyside Feedyard, L.C. v. Metropolitan Life Ins. Co.,* 106 S.W.3d 169, 173 (Tex. App.–Amarillo 2003, no pet.). (requiring the appellant to accompany his issue with substantive analysis to avoid waiver of the dispute). So, it matters not whether the trial court refused to submit an instruction regarding complaints on which it directed a verdict since the appellant failed to adequately attack the directed verdict. *Dolenze v. Pulse,* 791 S.W.2d 572, 573 (Tex. App.–Dallas

1990, writ dism'd w.o.j.) (refusing to consider whether the points raised warranted reversal because the appellant did not expressly attack the directed verdict).

Second, the alleged evidence purportedly entitling them to the instruction consisted of 1) multiple service calls by Bank-Tec in effort to repair the teller which calls occurred several months prior to the injury, 2) statements by bank employees which were not admitted into evidence, 3) testimony from the deposition of Kieran Nickoson which the trial court refused to admit into evidence, and 4) summary judgment exhibits. Furthermore, it is true that a trial court may commit error by refusing to submit a relevant jury question when the evidence supports its submission. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992). But, therein lies the problem. To qualify as such evidence, the data must be received into evidence at the actual trial of the dispute. Furthermore, the record citations provided by the Dunns allude to either argument of counsel or excerpts from summary judgment exhibits. The mere argument of counsel is not evidence. *McDuffie v. Blassingame,* 883 S.W.2d 329, 336 (Tex. App.–Amarillo 1994, writ denied). Moreover, whether that summary judgment evidence was eventually admitted at the actual trial of the cause goes unmentioned by the appellants. This is of import since it is not our duty to scour the trial record for evidence supporting their contention, especially in a multi-volume record like that before us. *Labrador Oil Co. v. Norton Drilling Co.,* 1 S.W.3d 795, 803 (Tex. App.–Amarillo 1999, no pet.). Rather, the Dunns had that obligation. And, because they failed to direct us to where the purported evidence upon which they rely was actually admitted at trial, we cannot agree with the proposition that the trial court was obligated to instruct the jury on malice or gross negligence.

16

### Issue Nine — Exclusion of Kieran Nickoson's Testimony

In their ninth issue, the Dunns contend the trial court abused its discretion in excluding the testimony of Kieran "Budgie" Nickoson, a purported expert. Their issue is premised upon the belief that the trial court erred in concluding that the evidence was inadmissible "because it was procured outside the discovery deadline." However, they provide neither authority nor argument to support the proposition that a trial court cannot exclude potential evidence under those circumstances. Furthermore, the testimony of an expert witness can be excluded if that witness' identity was not disclosed via timely supplementation of prior discovery responses. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 395 (Tex. 1989). The record at bar indicates that such a circumstance occurred here. Accordingly, we overrule the issue.

### Issue Ten — Admission of Surveillance Video

In their tenth issue, the Dunns complain of the trial court's admission into evidence of an edited surveillance video depicting various conduct of Dunn. They objected to its admission because it lacked "a sponsoring witness" and there were "no other safeguards to guarantee its accuracy." Furthermore, they did not have a copy of the tapes from which the edited video was derived. We overrule the issue for the following reasons.

First, the Dunns did not make a request for any information regarding any surveillance videos prior to the expiration of the discovery deadline.[5] Therefore, the

---

[5]The name of the videographer was provided to the Dunns in a supplemental response to requests for disclosures as a person with knowledge of relevant facts. The respondents also noted that the videographer had knowledge of the plaintiff's activities since the accident.

appellees were not required to produce to them the videos from which the clips presented at trial were derived.[6]

Second, the admissibility of a video is conditioned upon its identification by a witness as an accurate portrayal of the facts, and on verification by that witness or a person with knowledge that the photograph is a correct representation of such facts. *Davidson v. Great Nat'l. Life Ins. Co.,* 737 S.W.2d 312, 314-15 (Tex. 1987); *Kessler v. Fanning,* 953 S.W.2d 515, 522 (Tex. App.–Fort Worth 1997, no pet.). Furthermore, its accuracy or authenticity need not be established by the videographer; any person may do so if he observed the object or scene depicted and can testify that the video is an accurate portrayal of the facts. *Kessler v. Fanning,* 953 S.W.2d at 522; *S.D.G. v. State,* 936 S.W.2d 371, 381 (Tex. App.–Houston [14th Dist.] 1996, writ denied). Here, the video was presented during the cross-examination of Dunn. He not only agreed that he was the person filmed but also described the things he was doing in it. In other words, his testimony effectively supplied the predicate for the video's admission by revealing that its content was an accurate portrayal of the acts he was doing. Thus, we cannot say that the item was unauthenticated and, therefore, inadmissible.[7]

### Issue Eleven — Lost Jury Notes

---

[6]The record does reveal that appellees offered to produce the video to the Dunns after the discovery deadline in exchange for production of a settlement brochure prepared by the Dunns and a mutual agreement by both parties that those items would be admissible at trial. The Dunns refused the offer.

[7]To the extent the Dunns argue that any probative value of the tape was substantially outweighed by its prejudicial value, we note that the assertion was conclusory. That is, they did not brief it as required by the rules of appellate procedure. Thus, it was waived.

18

Via their eleventh issue, the Dunns argue they are entitled to a new trial pursuant to Rule 34.6(f)(2) of the Texas Rules of Appellate Procedure because of several lost jury notes. We overrule the issue for several reasons.

First, Rule 34.6(f)(2) provides that an appellant is entitled to a new trial if 1) the appellant timely requested a reporter's record, 2) without the appellant's fault, a significant exhibit or a significant portion of the reporter's notes and records have been lost or destroyed, 3) the lost or destroyed matter is necessary to the appeal's resolution, and 4) the parties cannot agree on a complete reporter's record. TEX. R. APP. P. 34.6(f)(1)-(4). Nowhere in their argument do the Dunns suggest or illustrate that the parties could not agree on a complete reporter's record. So, they have not satisfied the prerequisites of the rule.

Second, while it may be that the actual jury notes went missing, their content was read aloud, either verbatim or in summary, during a conference held in the trial judge's chambers. The trial court apparently convened the conference to entertain various objections and comments by the Dunns regarding those notes. More importantly, the court reporter transcribed not only the comments and objections but also the reading and summarization of the notes, and that transcription was included in the reporter's record filed with the court. Finally, the Dunns do not assert that the transcription inaccurately reflects the substance of the jury notes.

Third, obtaining a new trial under Rule 34.6(f) is conditioned upon proof of harm. *Isaac v. State,* 989 S.W.2d 754, 757 (Tex. Crim. App. 1999); *Nejnaoui v. State,* 44 S.W.3d 111, 114-15 (Tex. App.–Houston [14th Dist.] 2001, pet. denied). Furthermore, one does

19

not suffer harm unless the missing items are necessary to the resolution of the appeal. *Isaac v. State,* 989 S.W.2d at 757. Here, the Dunns argue that they were harmed because the jury notes related to the admission of evidence which they thought was inadmissible (*e.g.*, evidence concerning Dunn's past alcohol and drug abuse and the admission of the surveillance video) and because they contested the sufficiency of the evidence to support the jury's decision to deny Mrs. Dunn all the relief she desired. In other words, the Dunns believe that the notes proved the jury was considering matter they thought objectionable, and because it considered that matter, they were harmed. Also, they suggest that because the notes were missing, they were somehow prevented from illustrating the effect of the purportedly inadmissible evidence upon the jury's verdict. This argument is unfounded for two reasons. First, the Dunns did not attack on appeal the trial court's decision to admit the evidence of substance abuse. So, the effect that evidence may have had upon the jury is irrelevant. As to the surveillance video, we held it to be admissible. So, its effect upon the jury is inconsequential. Given this, the Dunns have not shown that they were harmed by the loss of the notes.

### Issue 12 — Cumulative Error

In their final issue, the Dunns argue that the cumulation of all of the error committed by the trial court throughout the trial entitles them to a new trial. Multiple errors, even if harmless when considered separately, may as a whole entitle a party to a new trial if it can be shown that the cumulative effect was reasonably calculated to and probably did cause the rendition of an improper judgment. *Gainsco County Mutual Insurance Co. v. Martinez,* 27 S.W.3d 97, 107 (Tex. App.–San Antonio 2000, pet. dism'd by agr.); *Weidner v.*

*Sanchez,* 14 S.W.3d 353, 377 (Tex. App.–Houston [14th Dist.] 2000, no pet.).  Yet, we did not find that the trial court committed any error here.  So, the cumulative error theory is inapplicable, and we therefore overrule the issue.

The judgment of the trial court is affirmed.


Brian Quinn
Justice