NO. 07-09-0274-CR

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



JANUARY
5, 2011

 



 

JOE D. VILLARREAL,  

 

                                                                                         Appellant


v.

 

THE STATE OF TEXAS,  

 

                                                                                         Appellee

____________________________

 

FROM THE 364TH DISTRICT COURT OF LUBBOCK
COUNTY;

 

NO. 2007-415,073; HONORABLE BRADLEY
S. UNDERWOOD, PRESIDING

 



 

Memorandum
Opinion

 



 

Before QUINN, C.J., and CAMPBELL  and HANCOCK, JJ.

            Joe D. Villarreal
seeks reversal of his conviction of injury to a child (his daughter) by
contending the trial court erred in admitting 911 calls made by his wife when
she did not testify at trial.  We affirm
the judgment. 

On November 23, 2006, Police Officer Chris Jenkins
was dispatched to an address in response to two hang-up 911 calls.[1]  A third 911 call was made while the officer
was in route.  Jenkins met the victim’s
mother, Delores, who had suffered injuries at the hand of appellant, her
husband.  Appellant had left in his
vehicle with the couple’s twelve-year-old daughter, and her mother was
concerned for her welfare.  The officer
drove Delores to her own mother’s house for her safety.  A short time later, Delores called 911
again.  When Jenkins arrived, Delores
pointed out appellant’s vehicle driving toward them.  The vehicle accelerated past them but was
stopped shortly thereafter by another police officer.  The daughter was removed from the vehicle and
had injuries to her face.   

            Delores did
not testify at trial.  Appellant argues
that the 911 calls with Delores’ voice on them should not have been admitted
into evidence because they violated his right to confront the witness.[2]  

            The Sixth Amendment right to confront
witnesses applies to out-of-court statements that are testimonial in
nature.  Martinez v. State, 311 S.W.3d 104, 109-10 (Tex. App.–Amarillo 2010,
pet. ref’d).  The admission of
testimonial hearsay is forbidden unless the declarant is unavailable to testify
and the defendant had a prior opportunity to cross-examine the declarant.  Crawford
v. Washington, 541 U.S. 36, 59, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177
(2004).  Whether an out-of-court
statement is testimonial is a question of law. 
De La Paz v. State, 273 S.W.3d
671, 680 (Tex. Crim. App. 2008).  A
statement is testimonial when the surrounding circumstances objectively
indicate that the primary purpose of the interview or interrogation is to
establish or prove past events potentially relevant to later criminal
prosecution.  Id.  In determining whether a
statement is testimonial, we may examine whether 1) the situtation was still in
progress, 2) the questions sought to determine what was transpiring, 3) the
primary purpose of the interrogation was to render aid rather than memorialize
a possible crime, 4) the questioning was conducted in a separate room away from
the alleged attacker, and 5) the events were deliberately recounted in a
step-by-step fashion.  Vinson v. State, 252 S.W.3d 336, 339
(Tex. Crim. App. 2008).  Generally, 911
calls are not designed to establish or prove some past facts but to describe
current circumstances requiring police assistance, although they can evolve
into testimonial statements once the questions necessary to resolve the
emergency have been posed. See Davis v.
Washington, 547 U.S. 813, 828, 126 S.Ct. 2266, 2277, 165 L.Ed.2d 224
(2006).  

            Here, the
calls related to a situation in progress. 
The first two occurred at 10:20 and 10:23 p.m.  The officer met with Delores at 10:29 p.m.
and took her to her mother’s house at 10:48 p.m. The last 911 call occurred at
approximately 11:09 p.m.  Thus, less than
an hour lapsed between all of them.  Furthermore,
in one, Delores could be heard crying and imploring the police to hurry because
appellant had their daughter.  In another,
she told the 911 operator that appellant had just called and theatened to harm the
child if she (Delores) did not return his phone.  When the officer spoke to Delores in person,
he also learned information that caused him to be concerned for the child’s
safety.  Moreover, the girl was not taken
from appellant until after the last of the calls. 

From these circumstances, one can reasonably
infer that the primary purpose of the calls was to enable police to meet an ongoing
emergency rather than garner inculpatory or testimonial evidence for later
use.  And, to the extent that the calls
may have referenced past events, the burden was on appellant to specifically
point out the portions of the calls that were inadmissible.  Whitaker
v. State, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009); Reyes v. State, 314 S.W.3d 74, 78 (Tex. App.–San Antonio 2010, no
pet.).  He did not do that.  Indeed, appellant failed to discuss the
content of the calls and explain what portion of that content was allegedly objectionable.  Instead, he simply argued that the transcription
of the calls in their entirety should not be admitted.  Such a broad attack falls short of adequately
illustrating that any testimonial evidence was admitted.   

Consequently, we hold that the trial court’s
decision to admit the evidence despite appellant’s oblique objection fell
within the zone of reasonable disagreement and, therefore, failed to constitute
an instance of abused discretion.       
 The judgment is affirmed.

 

                                                                                    Brian
Quinn 

                                                                                    Chief
Justice 

 

Do not publish. 











[1]The
first call was a hang-up.  The 911
operator then called the number back and a man answered and told the operator
that there was no problem.  In the next
call, a woman merely said she needed a cop and hung up.  The next two 911 calls contain more
substantive information from the victim’s mother.  





[2]Appellant’s
objection at trial was rather broad.  He
simply invoked the constitution instead of identifying the particular provision
of that document which he thought was involved. 
Yet, for purposes of this appeal, we assume, arguendo, that such was enough to
preserve his current complaint for review. 









e:12.0pt;line-height:200%;mso-ansi-language:EN-CA'>            Conlin testified as to the structure's
disrepair and the present lack of any permits to begin repairs.  Phipps testified to the general lack of
repairs to the property over the past ten years.  Louis McBee testified that he has seen the
property on a daily basis for the past six years and has never seen anyone on
the property making repairs of any kind. 
All the witnesses urged the Appeals Board to uphold the Commission's
decision not to grant a further extension. 
At the conclusion, the Appeals Board affirmed the Commission's
decision.  Park was informed of his right
to appeal the decision to district court. 


            




            July
28, 2008 Hearing

            A civil
penalty hearing was held the morning of July 28 wherein the Commission assumed Park
was absent but with notice that the hearing was scheduled for the morning.  Goesling asked the court to make any fines
high to send Park a message.  Colin
opined that Park had no intention to repair the house as evidenced by the length
of the proceedings and stated she had no new evidence.  McBee urged the Commission to act as aggressively
as possible and expressed some confusion with the administrative process.  At the conclusion of the evidence, the staff
recommended a civil penalty of $100 per day for 64 days or $6400. In support of
the fine, the Commission members considered the considerable length of time the
matter was pending with no progress, Park’s broken promises to make the
repairs, the time spent by the neighbors and neighborhood association coming to
administrative meetings and hearings, and approved a fine of $300 per day for
64 days or $19,200.

            In the afternoon, a hearing on the
structure was re-opened on the motion of the Commission.  Chairman Tinsley made the following
statement:  

Before we get started, we
heard testimony this morning on this case from interested parties, and then we
found out that Mr. Park's notification to be here was 1 o'clock.  So, in all fairness to Mr. Park, the---if the
Commissioners would disregard any testimony they heard from interested parties
this morning and just base it upon the evidence that we have here at hand at
this particular time, which would be Mr. Park and anybody else's testimony that
comes before us right now, in addition to any evidence that we have been
presented by the staff.

 

            The
issue at the hearing was whether any civil penalties would be assessed for the
noncompletion of the action plan submitted by Park in February.  At the hearing, Park designated Ron Dabelow as
his spokesperson.  Dabelow requested a
sixty day extension to consummate a sale of the property from Park to John
Brewer.  He indicated there was a verbal telephonic
agreement although Brewer had not seen the property.  Dabelow informed the Commission that Brewer
intended to rehabilitate the property and bring it up to Code.  He could not give the Commission a time frame
for the property's sale or its rehabilitation, nor did he know anything about Brewer's
credit status.  He did testify that, if
he was unable to complete the contract, they would look for another buyer.

            Dabelow further testified Park had
since 1996 to resolve the issues before the Commission and had not complied
with the Commission's prior orders.  Park
testified that the property had not been up to Code in nine and one half years
of his ownership.  The City's staff again
recommended a civil penalty of $100 a day for 64 days or $6400.  Based upon the lack of improvement in the
property's condition over a lengthy period of time, the egregious nature of the
case, the uncertainty of any sale to Brewer, and Park’s broken promises, the
Commission fined Park $300 a day for 64 days or $19,200, and informed him of
his right to appeal his case to the Fort Worth Appeals Board within 30 days.  It is undisputed that Park did not appeal the
Commission's order imposing civil monetary penalties.[4]

            In 2009, the City filed its original
and first amended petitions seeking an injunction requiring Park's compliance
with the Minimum Standards Building Code and recovery of the civil penalties
assessed by the Commission, interest and additional penalties together with
interest thereon.  In February 2010, Park
filed a motion for summary judgment and, in March, the trial court granted his
motion without stating its grounds for judgment.  This appeal followed.

Discussion

            The City asserts the trial court
erred in granting summary judgment in Park’s favor because (1)
Park's summary judgment motion was an impermissible collateral attack on the
City's order imposing civil penalties and (2) even if Park’s collateral attack
were considered a timely direct attack on the civil money penalties, Park
failed to prove the elements of his constitutional challenges as a matter of
law.   Because the City's second issue is
dispositive, we will consider it first.

            Standard
of Review

            We
review the trial court's summary judgment de
novo.  Provident Life and Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215
(Tex. 2003) (citing FM Props. Operating Co. v. City of Austin, 22
S.W.3d 868, 872 (Tex. 2000)). 
Summary judgment is appropriate when there is no genuine issue as to any
material fact and judgment should be granted in favor of the movant as a matter
of law.  Diversicare General Partner, Inc. v. Rubio, 185 S.W.3d 842, 846
(Tex. 2003) (citing KPMG Peat Marwick v.
Harrison County Hous. Fin. Corp.,
988 S.W.2d 746, 748 (Tex. 1999)).  A defendant is entitled to summary judgment
on an affirmative defense if the defendant conclusively proves all the elements
of the affirmative defense.  Id.; Rhone-Poulenc, Inc., 997 S.W.2d 217, 222-23 (Tex. 1999).  To accomplish this, the defendant-movant must
present summary judgment evidence that establishes each element of the
affirmative defense as a matter of law.  Ryland Group, Inc. v. Hood,
924 S.W.2d 120, 121 (Tex. 1996) (per
curiam).  

            In reviewing a trial court's summary
judgment, we resolve all doubts against the movant, and we view the evidence in
the light most favorable to the nonmovants.  Shah v. Moss, 67 S.W.3d 836, 842 (Tex. 2001).  Additionally, in determining whether a
disputed material fact issue exists, we take as true evidence favorable to the
nonmovant.  Id. (citing American Tobacco
Co., Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997)).  If a trial court's order granting summary
judgment does not specify the basis for the trial court's ruling, the summary
judgment will be affirmed if any of the theories advanced by the movant are
meritorious.  Joe v. Two Thirty Nine JV, 145
S.W.3d 150, 157 (Tex. 2004).

            Due
Process --- Adequate Notice and Right to Confrontation

            In
administrative proceedings, due process requires that parties be afforded a
full and fair hearing on disputed fact issues. 
City of Corpus Christi v. Public
Utility Commission of Texas, 51 S.W.3d 231, 262 (Tex. 2000) (citing Richardson v. City of Pasadena, 513
S.W.2d 1, 3 (Tex. 1974)).[5]  This includes the requirement that litigants
receive notice and an opportunity to be heard at a meaningful time and in a
meaningful manner.  University of Tex. Med. Sch. at Houston v. Than, 901 S.W.2d 926, 930
(Tex. 1995) (citing Mathews v. Eldridge,
424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).      

            The
right to cross examine adverse witnesses and to examine and rebut all evidence also
applies to administrative hearings.  Rector v. Texas Alcoholic Beverage
Commission, 599 S.W.2d 800, (Tex. 1980).  See
City of Corpus Christi, 51 S.W.3d at 263 (an agency's procedures may violate
a litigant's right to confront witnesses if a denial of due process prejudices a
litigant's substantial rights); Texas
Health Facilities Commission v. Charter Medical-Dallas, Inc., 665 S.W.2d
446, 454 (Tex. 1984) (an agency's decision may be arbitrary and capricious if a
denial of due process has resulted in prejudice of a litigant's substantial
rights).

            Park’s sworn affidavit in support of
his motion and exhibits indicate that he was notified to appear for the July
28, 2008, civil penalty hearing at 1:00 p.m. 
When he arrived at the hearing room at the appointed time, he was
informed that a hearing on civil money penalties had taken place that morning,
in his absence, and several witnesses had testified.  

            In response, the City filed the
affidavit of Sarah Ireland, an Administrative Technician for the Code
Compliance Department of the City of Fort Worth, as well as complete
transcripts of the proceedings described earlier in this opinion.  Ireland's affidavit indicates Park had
originally been sent a notice indicating the civil penalty hearing would take
place on July 28 in the morning but, due to a clerical error, a subsequent
reminder notice indicated the hearing was to take place on July 28 in the
afternoon.

            In the afternoon, the Commission
acknowledged their error and re-opened the hearing.  Prior to taking any evidence, the Chairman instructed
the remaining Commissioners to disregard all testimony heard in the morning
hearing and base their decision on the evidence presented in the afternoon
hearing including Park’s testimony, anyone else's testimony and evidence
presented by the staff.  The hearing then
proceeded without objection and in the same manner as the morning hearing but without
the participation of the witnesses that testified earlier.  Park fully participated through his
spokesperson who presented evidence on Park’s sole defense or contention, i.e.,
an oral agreement had been made to sell the property and the prospective owner had
agreed to bring the property up to Code. 
As in previous hearings, Park did not contest the property's
deficiencies, their duration, his failure to meet
prior deadlines or whether he had violated prior Commission rulings.  Park and his spokesperson were permitted to
speak, testify and ask questions.  When
asked by the Chairman at the hearing's conclusion whether there was anything
else they wanted to add, Park’s spokesperson responded:  "No, we just appreciate your
time."  

            Interpreting the evidence in favor
of the nonmovant, Park has failed to prove as a matter of law that he is
entitled to summary judgment on his due process issues of inadequate notice and
right to confrontation because fact issues remain, i.e., whether notice was inadequate
despite Park’s full participation in the afternoon hearing,[6]
whether Park waived any alleged due process violations by not objecting during
the afternoon hearing,[7]
whether there is evidence that the Chairman's admonition was insufficient to
limit the Commission's decision-making to the evidence presented in the
afternoon hearing[8]
and, if so, whether Park can establish any harm or prejudice to his substantial
rights by not being able to cross-examine the witnesses who testified at the
morning hearing.[9]  For these reasons, we must find that the
trial court erred in granting Park’s motion for summary judgment.  

            Accordingly, the City's second issue
is sustained and its first issue is pretermitted.  See
Tex. R. App. P. 47.1.

Conclusion

            The
trial court's judgment is reversed and this cause is remanded for proceedings
consistent with this opinion.  

 

                                                                                    Patrick
A. Pirtle

                                                                                          Justice

 











[1]John T. Boyd, Chief Justice (Ret.),
Seventh Court of Appeals, sitting by assignment.  Tex. Gov=t Code Ann. ' 75.002(a)(1)
(West 2005).





[2]Originally appealed to the 2nd Court
of Appeals, this case was transferred to this Court by the Texas Supreme Court
pursuant to its docket equalization efforts. 
See Tex. Gov=t Code
Ann. ' 73.001 (West 2005).  We are unaware of any conflict between
precedent of the 2nd Court of Appeals and that of this Court on any
relevant issue.   See Tex. R. App. P. 41.3.





[3]An
inspection performed by the Commission on January 10, 2008, pursuant to an
administrative search warrant identified the following deficiencies in the
exterior:  the exterior walls exhibited
missing boards, roof was loose, faulty weather protection; roof with rotten
wood on the overhang and shingles that were deteriorated; foundation access
cover was missing; windows had broken glass, missing screens and rotting wood;
doors were missing, damaged, a poor fit and missing doorknobs; porches had lost
brick at the support post and a trip hazard; the electrical service had exposed
wiring, the steps were missing at the rear and side and large cracks in the
front steps.  An inspection of the
interior identified the following deficiencies: 
the electrical system had exposed wiring; a bathtub was missing and
damaged; faucets were missing; water heater, water closet, lavatory, and
kitchen sink were missing; mechanical system was missing a heat source;
interior walls were missing sheetrock; ceilings were missing boards and holes;
floors were missing boards, holes, unlevel and no impervious material on
bathroom floor; missing smoke detector; missing handrails for interior steps
and stairs; loose boards on interior stairs; and accumulation of combustible
materials in a vacant house.  





[4]"If no appeals are taken from
the decision of the commission panel within the required period, the decision
of the commission panel is, in all things, final and binding."  Tex. Loc. Gov't Code Ann. §
54.039 (West 2008).  Further,
"[a] hearing before the appeals board shall exhaust the administrative
remedies of the property owner . . . under this article."  Fort Worth, Tex., Minimum
Building Standards Code § 7-107(j) (2003).    





[5]See Tex. Const. art. I, § 19; U.S. Const. amend. XIV,
§ 1.  The due process clause in
our state constitution requires the same level of due process as the federal
constitution.  University of Texas Med. Sch. at Houston v. Than, 901 S.W.2d 926,
929 (Tex. 1995). 





[6]See Dunn v. Bank-Tec South, 134 S.W.3d 315, 321 (Tex.App.--Amarillo 2003, no pet.) (concluding trial court did not violate due process rights of
a party given inadequate notice of summary judgment hearing where party
attended and participated in summary judgment hearing).  





[7]See Balkum v. Tex. Dept. of Public Safety, 33 S.W.3d 263, 266-67 (Tex.App.--El Paso 2000, no pet.) (concluding litigant waived any complaint pertaining to Sixth
Amendment's right of confrontation when litigant did not raise the due process
issue in the administrative hearing). 





[8]See Walker v. Tex. Employers' Ins. Ass'n, 155 Tex. 617, 291 S.W.2d 298, 302
(1956) (jury presumed to have obeyed the trial court's instruction and disregarded
testimony); State v. Harrison, 97
S.W.3d 810, 817 (Tex.App.--Texarkana 2003, no pet.) (jury
presumed to have obeyed trial court's admonition limiting its consideration of
testimony).  





[9]See City of Corpus Christi, 51 S.W.3d at 262-63 (right to confrontation not denied
during administrative hearing where litigants "failed to explain what
evidence they would have adduced that is pertinent to a material disputed fact
issue had they been given more time to . . . present evidence, or cross-examine
witnesses").