The STATE of Texas, Appellant,

v.

RALPH WATSON OIL COMPANY, INC., Appellee.

No. 9527.

Court of Appeals of Texas, Texarkana.

Aug. 25, 1987.

Rehearing Denied Sept. 15, 1987.

Jim Mattox, Atty. Gen., Elliott Mitchell, Asst. Atty. Gen., Austin, for appellant.

W.F. Palmer, Huffman and Palmer, Marshall, for appellee.

GRANT, Justice.

The State of Texas appeals from an eminent domain proceeding in which Ralph Watson Oil Company (hereafter referred to as Watson Oil) was awarded $86,642 for the taking of a strip of land for highway purposes and for the damages resulting to the remaining tract.

The State brings five points of error contending that there was no evidence or there was insufficient evidence to support the jury finding on the market value of the land, and that the trial court erred in admitting opinion testimony concerning the value of the remaining property that was based upon the sales volume of the business located on the land.

In reviewing a no evidence point, the reviewing court considers only the evidence tending to support the finding, viewing it in the light most favorable to the finding, giving effect to all reasonable inferences therefrom, and disregarding all contrary or conflicting evidence. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex. 1981). An insufficiency point requires the reviewing court to consider and weigh all the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The expert witness on land values called by Watson Oil testified that there were no comparable land sales and that the highest and best use of this tract of land was for retail fuel sales. He therefore based his evaluation upon the productive value of the property.

Watson Oil offered evidence that the sales volume of the business was 70,000 gallons per month and that seventy percent of that amount came from diesel sales. The State's expert testified that a station that does seventy percent of its sales volume in diesel fuel was unique in his experience, because stations normally could expect from five to fifteen percent of its sales to be diesel fuel. One of Watson Oil's experts was the owner of a competing oil company, and he testified that the rental of the property containing a gasoline station was customarily determined on a sales volume basis with monthly rental being determined by multiplying the number of gallons sold in a month by a rate of between three and four and a half cents per gallon. Watson Oil's expert multiplied 70,000 gallons by three cents per month rental and calculated the rental value of the property to be $2,100 per month. Based upon this figure, he valued the property in the range of $181,000 to $190,000.

Witnesses for Watson Oil testified that the remaining property was physically incapable of accommodating diesel trucks in the manner which it had prior to the condemnation. These witnesses stated that the convenience store would need to be moved back from the frontage to allow for replacement of gasoline pumps that had been taken by the State and that the remaining space was insufficient to allow the trucks purchasing diesel fuel to maneuver behind the building as they previously had. The testimony further indicated that the trucks would be unable to use the existing

diesel pumping facilities, because to do so the trucks would have to park on the State's newly obtained right of way. Therefore, Watson Oil's expert took the position that the highest and best use of the land had been changed by the taking, because it was no longer suitable for retail fuel sales. He testified that the remainder value of the tract before the taking was $174,750; after the taking, $21,175. (This value was conditioned on the underground gasoline tanks having a value of $4,000 if some party wanted to purchase the property for a gasoline station. Otherwise, he set the property value at $17,175.) He valued the portion taken at $6,750.

The State's expert witness presented a market data and an income approach analysis of the property value and testified that in his opinion the property should rent for $1,000 per month. He stated that he based his opinion on conversations with realtors in the area and with the local Texaco distributor. He testified that his evaluations were higher using the cost approach than under the income approach. According to his testimony, the remainder value before the taking was $59,854; after the taking, $43,825. He valued the portion taken at $9,254. The following findings were made by the jury:

### SPECIAL ISSUE NO. 1

From a preponderance of the evidence what do you find was the market value of the strip of land and improvements condemned for highway purposes on the date of taking, considered as severed land?

. . . .

ANSWER: $11,300.00

### SPECIAL ISSUE NO. 2

From a preponderance of the evidence what do you find was the market value of Defendants' remaining land and improvements, *not* including the strip condemned, immediately *before* the strip was taken for highway purposes?

. . . .

ANSWER: $90,000.00

### SPECIAL ISSUE NO. 3

What do you find from a preponderance of the evidence was the market value of Defendants' remaining land and improvements immediately *after* the taking of the strip condemned for highway purposes?

. . . .

ANSWER: $18,000.00

The only issue of which the State complains is special issue two. For the verdict to be upheld, it must fall within the range of value shown by competent evidence. *Trinity River Authority v. Barrett*, 497 S.W.2d 91 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ); *State v. Rigby*, 324 S.W.2d 941 (Tex.Civ.App.—Waco 1959, writ ref'd n.r.e.). The State's expert testified that the remainder value before the taking was $59,854; Watson Oil's expert set that value at $174,750, and the jury awarded $90,000, an amount within the range of values shown by the evidence. The verdict of the jury is therefore supported by the evidence, if that evidence has probative force.[1]

The State contends that Watson Oil's experts used inadmissible evidence as a factor in determining the value of the property, and thus their opinions have no probative force and cannot support the verdict in special issue two. *State v. Bryan*, 518 S.W.2d 928 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ). While it is true that business profits are not to be considered in determining the damages caused by a condemnation, evidence of sales volume can be used as a factor in determining the value of land upon which the business sits. *City of Dallas v. Priolo*, 150 Tex. 423, 242 S.W.2d 176 (1951). The *Priolo* case involved the taking of parking facilities from a business property. Testimony of market value based in part upon future loss of business as a result of the loss of

---

1. The jury answer to special issue one is for an amount clearly outside the range of value shown by the testimony, and the answer to special issue three is within that range only if we assume that the jury believed that the underground gasoline tanks were valueless. These findings were not appealed, and we do not review them here.

parking space was held to be admissible. The witness in *Priolo* testified that the amount of business had considerable bearing on the rent that a tenant would pay and that rental value is an element in fixing market values. In that case, the income was a basis for evaluation, and the remaining land and building was found to be devalued by having no parking space in front.

*State v. Zaruba,* 418 S.W.2d 499 (Tex. 1967), reiterates the holding in *Priolo* that evidence of injury to a business is admissible not as an element of damage but as affecting the market value of the remaining land and improvements for the uses to which they were adapted.

Furthermore, the testimony concerning volume of sales and the unusually high percentage of diesel sales was also admissible under the rationale of *City of Austin v. Casiraghi,* 656 S.W.2d 576 (Tex.App.—Austin 1983, no writ). The court in the *Casiraghi* case allowed evidence to the effect that the market value was higher because it was uniquely suited to the possible business conducted there. This rationale is rooted in the policy statement set forth in *State v. Walker,* 441 S.W.2d 168 (Tex.1969) (quoting Rayburn *Texas Law of Condemnation* § 92):

> In considering whether or not tendered testimony is admissible it should be remembered that the purpose of the courts is to arrive ultimately at a measure of damages that will "set up a yardstick for value that is broad enough and ultimate enough to include all elements of damages and all elements of values, to the end that just compensation for the land taken or damaged can first be paid to the landowner."

Under the rationale imposed by Walker, we find that the evidence used as a basis in determining rental value of the property was clearly admissible, because the rental value was a factor used by the experts in formulating an opinion on the value of the property.

The testimony of the expert witnesses was based upon admissible evidence and has probative value. We further find the evidence to be sufficient to support the verdict.

We affirm the judgment of the trial court.