**The STATE of Texas, Appellant,**

v.

**Bill HARRISON, et ux., Appellees.**

No. 06-01-00045-CV.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 12, 2002.

Decided Jan. 24, 2003.

Susan Desmarais Bonnen, Assistant Attorney General, Transportation Division, Austin, for appellant.

Jim Ammerman II, Law Offices of Jim Ammerman, II, Marshall, for appellees.

Before MORRISS, C.J., ROSS and GRANT,* JJ.

## OPINION

Opinion by Justice ROSS.

This is the second time this land condemnation case has been before this Court. In 1998, we reversed and remanded for a new trial, which is now the subject of this appeal.

In 1993, the State of Texas, in order to further its plan of widening State Highway 300, filed a petition to condemn 15.809 acres of a 212–acre tract of land owned by

Bill and Imogene Harrison.[1] The Harrisons' property had frontage on S.H. 300 and on Pattonfield Road, a road along which the Gilmer city limits line runs. In 1996, the Special Commissioners awarded the Harrisons $47,220.00 for the 15.809 acres. The Harrisons filed an objection to the award, and the administrative proceeding was converted into a civil suit.

In the first jury trial, a judgment favorable to the Harrisons was entered, and the State appealed to this Court. As stated, we reversed and remanded for a new trial. After the second jury trial, the Harrisons were awarded $118,567.50 for the property, which judgment the State now appeals. The State asserts the trial court abused its discretion in admitting evidence of: 1) noncomparable sales; 2) the landowner's specific plans and intended use of the property; 3) a potential sale; and 4) the landowner's value opinion, which was based on an inadmissible remote sale. The State further contends the trial court erred: 1) in denying its motion for mistrial, based on counsel for the Harrisons improperly telling the jury the court of appeals had approved the use of the comparable sales utilized by the Harrisons' appraiser; and 2) in denying the State's motion for judgment notwithstanding the verdict and motion for new trial because there was no evidence, or in the alternative, insufficient evidence to support the jury's finding as to the market value of the Harrisons' 15.809 acres of land as of May 2, 1996.

Evidentiary rulings are committed to the trial court's sound discretion. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex.1998). However, if we determine an admission of evidence by the

---

* Ben Z. Grant, Justice, Retired, Sitting by Assignment.

1. The 15.809 acres consisted of two tracts: Part 1 was 13.843 acres, and Part 2 was 1.966 acres.

trial court was an erroneous admission, then we must determine whether such admission requires reversal. *Boothe v. Hausler,* 766 S.W.2d 788, 789 (Tex.1989). This requires an examination of the entire record. *Id.* If the erroneously admitted evidence is merely cumulative or does not concern a material issue dispositive of the case, the error is harmless. *Id.* Only when the error probably caused the rendition of an improper judgment is a cause to be reversed. TEX.R.APP. P. 44.1(a)(1).

The State's appraiser testified that the property's highest and best use was rural residential, which entitled the Harrisons to $46,444.00 for the 15.809 acres. The Harrisons' appraiser testified the primary highest and best use was for commercial or industrial use. In his opinion, the Harrisons were entitled to $152,192.00. Mr. Harrison testified he requested compensation of $189,708.00 for the property, which he had intended to be developed commercially.

The Harrisons' appraiser based his valuation on four other sales: 1) a 3.216–acre tract which was already developed as a wrecking yard; 2) a 1.46–acre tract which was improved with a residence after purchase; 3) a 1.47–acre tract which was improved with a residence after purchase; and 4) an 11.302–acre tract which was improved with a Wal–Mart department store after purchase. At a pretrial hearing, however, both the State and the Harrisons agreed that the 3.216–acre tract was not a comparable sale for an unimproved tract like the Harrisons' property. At trial, therefore, the Harrisons' appraiser relied on the two residential lots and the Wal–Mart tract. At oral argument of this case, the Harrisons' attorney conceded the two residential lots were not comparable sales, leaving the Wal–Mart tract as the only remaining comparable sale offered by the Harrisons.

In its first point of error, the State contends the trial court abused its discretion in admitting evidence of non-comparable sales. The trial court has great discretion in determining whether sales offered in evidence are comparable to the land being taken, and a ruling by the court that a prior sale is sufficiently similar and therefore admissible will not be reviewed except to determine whether there has been an abuse of discretion. *Bridges v. Trinity River Auth.,* 570 S.W.2d 50, 56 (Tex.Civ.App.-Tyler 1978, writ ref'd n.r.e.). The trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). Comparable sales are generally admissible unless it should appear that reasonable minds cannot differ from the conclusion that the evidence of the other sale lacks probative force because of its dissimilarity to the subject property. *Bridges,* 570 S.W.2d at 56.

After the concession made at oral argument, the only comparable sale to be analyzed is the 11.302–acre tract located on U.S. Highway 271, which became the site of a Wal–Mart department store. The State contends this was not a comparable sale because the tract was in the Gilmer business district and on U.S. 271, which the State considers a busier and better road than S.H. 300. The Harrisons point out, however, that their property was only 300 to 400 yards from U.S. 271 and had easy access to that major thoroughfare from either Pattonfield Road or Quail Lane. Further, the Harrisons' property was approximately 2,000 feet from two of the three major industries in the city of Gilmer and less than a mile from the third. We hold it was not an abuse of discretion for the trial court to consider the 11.302–acre tract as comparable to the Harrisons' property. This point of error is overruled.

■ The State also contends the trial court abused its discretion in admitting evidence of the landowner's specific plans and intended use of the property. In connection with the landowner's testimony, the State further contends the trial court abused its discretion in admitting evidence of a potential sale and in admitting evidence of the landowner's value opinion which was based on an inadmissible remote sale.

■ In deciding market value, the jury is permitted to consider all of the uses to which the property is reasonably adaptable and for which it is, or in all reasonable probability will become, available within the foreseeable future. *State v. Windham,* 837 S.W.2d 73, 77 (Tex.1992). Proof of the adaptability of land for certain purposes is admissible. *Kaufman Northwest, Inc. v. Bi–Stone Fuel Co.,* 529 S.W.2d 281, 288 (Tex.Civ.App.-Tyler 1975, writ ref'd n.r.e.). However, evidence of a landowner's subjective intent concerning the future use of the property is inadmissible because it is too speculative and uncertain. *Id.*

The State contends it was error to admit the parts of Mr. Harrison's testimony, and that of his banker, Kenneth Stewart, where each discussed Mr. Harrison's plans, at the time he and his wife purchased the property in 1980, to commercially develop that property.

At the time of condemnation in 1996, the Harrisons were using the property for grazing cattle, and the record shows no evidence of any steps taken by them to commercially develop the property. Because Mr. Harrison's intentions to develop the property commercially were never acted on, and were therefore only subjective, his testimony about such commercial development should not have been admitted. If Mr. Harrison could not testify to his subjective intentions, then a third party, his banker in this case, could not do so

either. It was error to admit this testimony.

■ The State also contends it was error to allow Doyle O'Neal, a realtor, to testify that in 1995 he was hired by a client to find a location for a tank testing business and that the best location he found for the business was the Harrisons' property. O'Neal testified he called Mr. Harrison and was told the property was for sale. He further testified his client was interested in the Harrisons' property for a tank testing facility.

The State contends evidence regarding a potential purchaser for commercial industrial use was inadmissible, citing *Hanks v. Gulf, Colo. & Santa Fe Ry. Co.,* 159 Tex. 311, 320 S.W.2d 333, 337 (1959), and *State v. Clement,* 252 S.W.2d 587, 588 (Tex.Civ. App.-El Paso 1952, no writ).

■ The State is correct that unaccepted offers are not admissible as evidence of a property's worth. *Clement,* 252 S.W.2d at 588. However, O'Neal's testimony was evidence of the type of property involved in the condemnation, rather than specific evidence of the property's worth. The testimony showed the property as suitable for commercial use, as contended by the Harrisons and their appraiser. Therefore, it was not error to allow O'Neal to testify about his recommendation of the Harrisons' property to his client who was searching for a location for a tank testing facility. Because O'Neal's testimony was properly admitted, we find the error in admitting the testimony of Mr. Harrison, and that of his banker, concerning Mr. Harrison's intentions to develop his property commercially, was harmless. Such testimony was harmless because it was merely cumulative of the testimony given by O'Neal showing the property's potential for commercial use. This point of error is overruled.

The State next contends the trial court abused its discretion by admitting evidence of the landowner's value opinion, which was based on an inadmissible remote sale. In the first appeal of this case, this Court held in an unpublished opinion that Mr. Harrison's testimony that his property was worth $12,000.00 per acre was "*some* evidence supporting the findings of the jury,"[2] but because his opinion concerning the value of his property was based on a prior sale of that property that was remote in time,[3] we found his testimony factually insufficient to support the jury's findings. At this trial, Mr. Harrison again testified he believed his property had a value of $12,000.00 per acre.

Before expressing this opinion before the jury, the State conducted a voir dire examination outside the jury's presence. When questioned by the State at this *sub rosa* hearing, Mr. Harrison testified his opinion that his property was worth $12,000.00 per acre was based on a 1982 sale of a portion of his property:

Q. As I understand it, it's your opinion that the 15.809 acres which has been acquired by the State of Texas has a value of $12,000 per acre, correct?

A. That's what I quoted, yes, ma'am.

Q. Okay. That's your opinion, correct?

A. Yes, ma'am.

Q. And as I understand it, that opinion is based on the fact that back in 1982 you sold some 7.7 acres to Mitchell Oil Company for $12,000 an acre, correct?

A. Yes, ma'am.

Yet, when Mr. Harrison was questioned by his own attorney outside the jury's presence, he testified $12,000.00 was his asking price "right after I bought it" in 1980. But, as the State points out, when Mr. Harrison's attorney asked him, "Is your opinion of the market value of your property based solely on the fact that you actually sold some of it to Mitchell Oil two years after you bought the property?" Mr. Harrison answered, "Yes."

When Mr. Harrison testified before the jury, he elaborated about how he arrived at the $12,000.00 per acre value. When asked, "[W]hat did you do to come up with what you thought to be the market value?" Mr. Harrison answered, "Well, there's some property sold. Direct north there's a First National Bank, there's a half a block there, and I based it on that partly, and that—that's where I come up with my decision." Mr. Harrison agreed with his counsel that he arrived at this valuation shortly after he bought the property in 1980. However, Mr. Harrison further testified that in his opinion the market value of his property did not increase between the time he initially thought it was worth $12,000.00 per acre and the time of the condemnation.

In the previous opinion, we held Mr. Harrison's valuation of his land was insufficient to support the jury's findings because it was improperly based on a remote sale. However, at this trial, Mr. Harrison expanded his testimony to include the fact that he did not feel the market value of his property had increased. Therefore, although the origin of Mr. Harrison's valuation of his property may have been based on a sale that is now remote, his opinion of the value of his property at the time of the condemnation was based on his opinion that the land had not increased in value.

2. *State v. Harrison,* No. 06–98–00007–CV, 1998 Tex.App. LEXIS 7668 (Texarkana Dec. 11, 1998, no pet.) (not designated for publication).

3. A 1982 sale to Mitchell Oil Company.

Moreover, at another point in the trial, Mr. Harrison testified he was born and reared in Gilmer, and returned to Gilmer after his military service in the 1940s. He further testified he had "invested in land and sold it" as a means of income. It was reasonable for the jury to infer that Mr. Harrison used his lifelong residency in Gilmer and his past experience in investing and selling land as an additional basis for his valuation of his property.

■ Generally, a property owner can testify to the market value of his or her property, even if the owner could not qualify to testify about the value of similar property belonging to someone else. *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984). Because the totality of Mr. Harrison's testimony supports the inference that his opinion concerning the value of his land was not based solely on a remote sale, we hold it was not an abuse of discretion to permit him, as the landowner, to express that opinion before the jury. The State's contention to the contrary is overruled.

■ As its fourth point of error, the State contends the trial court erred in denying its motion for mistrial based on counsel for the Harrisons improperly telling the jury the court of appeals had approved the use of the comparable sales utilized by their appraiser. The following testimony, elicited from the Harrisons' appraiser by their counsel, was the basis for the State's objection and request for mistrial:

[MR. AMMERMAN (Harrisons' attorney)]: Since Mr. Wendlandt [one of State's counsel] thinks it important that I provided you these comparable sales, I want you to explain to the jury fully and completely, in complete detail, how I came to—what that involved.

[MR. MANNING (appraiser)]: Those sales apparently had been utilized in a prior lawsuit, I guess, that they were used and had been approved by the Court—

MR. WENDLANDT: Your Honor, I'm going to object to this. This completely mischaracterizes what occurred. This gentleman is not qualified as a lawyer. And again, it mischaracterized what occurred with regards to those sales.

MR. AMMERMAN: Judge, I didn't ask him—I didn't ask him—

THE COURT: I didn't understand the question. I understand the question is what involvement did you have in providing the comparables.

MR. AMMERMAN: What was his understanding when I gave him those, what was the history.

THE COURT: I'm going to overrule the objection.

[MR. MANNING]: They came out of another appraiser's report that had been approved by the courts and that he had utilized it in a prior lawsuit on this particular case. And all you did was give me those papers that had been approved.

[MR. AMMERMAN]: By the Court of Appeals?

[MR. MANNING]: Yes, sir.

The State objected, and the trial court stated, "Well, I don't know whether it was approved by the Court of Appeals or not. I don't want to get into that, I don't want to put any stamp of approval by some Court of Appeals." When the State asked the jury to be instructed about what to consider from the above testimony, the trial court instructed the jury to limit the witness' testimony to how he got the comparable sales used in his appraisal and to "[c]ompletely disregard any opinion by the Court of Appeals either up or down." The State did not request any further instructions.

■ The conduct of the Harrisons' counsel in suggesting that the sales used by their appraiser had been approved by this Court was improper. Nonetheless, the jury must be presumed to have obeyed the instruction of the trial court. *Walker v. Tex. Employers' Ins. Ass'n,* 155 Tex. 617, 291 S.W.2d 298, 302 (1956). A determination of whether the error probably caused the rendition of an improper judgment by influencing the jury to return a verdict it probably would not otherwise have returned is to be made from an examination of the record as a whole. *Id.* at 301. We presume the jury obeyed the trial court's strong admonition to "[c]ompletely disregard" whether the court of appeals had approved the comparable sales, and in light of the record as a whole, we conclude it was not error for the trial court to deny the State's motion for mistrial.

As its fifth point of error, the State contends the trial court erred in denying its motion for judgment notwithstanding the verdict and its motion for new trial because there was no evidence, or in the alternative, insufficient evidence to support the jury's answer to Question No. 1, which asked, "From a preponderance of the evidence, what do you find to be the Market Value of the 15.809 acres of the property owners' land, including improvements thereon, condemned for highway purposes on the date of taking, May 2, 1996, considered as severed land?" The jury answered $118,567.50.

■ When deciding a no-evidence point, we must consider all the evidence in the record in the light most favorable to the party in whose favor the verdict has been rendered, and we must apply every reasonable inference that could be made from the evidence in that party's favor. *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). An insuffi-

ciency point requires the reviewing court to consider and weigh all the evidence. *State v. Ralph Watson Oil Co.,* 738 S.W.2d 25, 26 (Tex.App.-Texarkana 1987, writ denied). The testimony of the Harrisons' appraiser that the property in question had a value of $152,191.00 and the testimony of Mr. Harrison, as the landowner, that his property was worth $12,000.00 per acre provide sufficient evidence to support the jury's answer to Question No. 1.

■ Even so, we must consider whether the testimony of the Harrisons' appraiser regarding the two residential lots was harmful error. The Harrisons conceded at oral argument the admission of this testimony was improper. *See* TEX.R.APP. P. 44.1(a)(1). The State contends this evidence probably did cause the rendition of an improper verdict by the jury, arguing this evidence caused the jury to improperly value the Harrisons' property as lots and not as an entire parcel.

Citing *Lower Nueces River Water Supply District v. Collins,* the State contends this constitutes reversible error. *Lower Nueces River Water Supply Dist. v. Collins,* 357 S.W.2d 449, 452 (Tex.Civ.App.-San Antonio 1962, writ ref'd n.r.e.). One of the most hotly contested issues in *Collins* was whether the land in question was capable of being subdivided. *Id.* at 451. The landowners introduced plats which illustrated how their land could be subdivided into lots; these plats were color coded to indicate the most desirable lots. *Id.* All of the valuation testimony in *Collins* was based on subdividing the acreage as illustrated by the plats. *Id.* at 452. The appeals court held the plats were inadmissible and found their admittance to be reversible error. *Id.*

When testifying about the two residential lots in this case, the Harrisons' appraiser said one lot sold for $10,500.00 and the other sold for $10,400.00, and then

answered affirmatively when asked, "So if you look at Mr. Harrison's property and he divided the 15 acres up into one and a half acres, the price per acre would be 10,4 or 10,5 per acre?"

The general rule in condemnation cases is that, when the property condemned is raw acreage, it is improper to admit evidence of hypothetical, nonexistent subdivisions. *Boswell v. Brazos Elec. Power Coop., Inc.*, 910 S.W.2d 593, 601 (Tex.App.-Fort Worth 1995, writ denied). Therefore, it would be wrong to value the Harrisons' property according to its worth as subdivided lots. Yet, even though the Harrisons' appraiser answered affirmatively to the above question, it was only a small part of his testimony. In fact, he ultimately testified the highest and best use for the property was either commercial or industrial, not residential. In light of the record as a whole, the testimony of the Harrisons' appraiser concerning the two residential lots did not likely cause the rendition of an improper verdict. The jury's answer to Question No. 1 was substantially less than the fair market value placed on the property by the Harrisons' appraiser. The admission of his testimony concerning the residential lots was therefore harmless error.

We affirm the judgment.