NO. 07-10-0279-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JULY 26, 2011

_____

CITY OF FORT WORTH, TEXAS, APPELLANT

v.

JAMES F. PARK, APPELLEE

_____

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY;

NO. 096-236731-09; HONORABLE JEFF WALKER, JUDGE

_____

Before QUINN, C.J., PIRTLE, J., and BOYD, S.J.[1]

**MEMORANDUM OPINION**

Appellant, City of Fort Worth, appeals from entry of summary judgment in favor of Appellee, James F. Park, in the City's action seeking to enforce a prior order by the City's Building Standards Commission ("Commission") assessing civil money penalties for violations of the City's Minimum Building Standards Code ("Code") and an injunction

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (West 2005).

requiring Code compliance.[2]  In support, the City asserts the trial court erred in granting summary judgment in Park's favor because (1) Park's summary judgment motion was an impermissible collateral attack on the City's order imposing civil penalties and (2) even if Park's collateral attack were considered a timely direct attack on the civil money penalties, Park failed to prove the elements of his constitutional challenges as a matter of law.  We reverse and remand for proceedings consistent with this opinion.

## Background

Park owns a single family house located at 2317 Oakland Boulevard in Fort Worth, Texas (property).  This house is not his homestead.  Park lives elsewhere in Arlington, Texas.  Since March 21, 1996, Park has received numerous notices from the Commission requiring his compliance with the Code but has not taken any corrective action.

### January 28, 2008 Hearing

On January 28, 2008, the Commission held a hearing on the property's deficiencies.[3]  Park appeared at the hearing and did not dispute the deficiencies.  He

---

[2]Originally appealed to the 2nd Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  See Tex. Gov't Code Ann. § 73.001 (West 2005).  We are unaware of any conflict between precedent of the 2nd Court of Appeals and that of this Court on any relevant issue.  See Tex. R. App. P. 41.3.

[3]An inspection performed by the Commission on January 10, 2008, pursuant to an administrative search warrant identified the following deficiencies in the exterior:  the exterior walls exhibited missing boards, roof was loose, faulty weather protection; roof with rotten wood on the overhang and shingles that were deteriorated; foundation access cover was missing; windows had broken glass, missing screens and rotting wood; doors were missing, damaged, a poor fit and missing doorknobs; porches had lost brick at the support post and a trip hazard; the electrical service had exposed wiring, the steps were missing at the rear and side and large cracks in the front steps.  An inspection of the interior identified the following deficiencies:  the electrical system had exposed wiring; a bathtub was missing and damaged; faucets

2

asked the Commission to defer ruling so that he could develop a plan for correcting the deficiencies. Park indicated that he was leasing land for oil and gas purposes and would soon have the money to undertake repairs.

Two neighbors appeared before the Commission: Gigi Goesling and Wanda Conlin. They testified that the house had been falling down and in disrepair for ten years. Aside from presenting an eyesore, Goesling indicated vagrants were living in the house and outdoor scaffolding was a safety hazard for children playing in and around the house. Goesling and Colin urged the Commission to take action. Park did not question the neighbors. The Commission gave Park seven days to remove the scaffolding, thirty days to return with a plan of action and continued the case until their meeting in February.

### February 25, 2008 Meeting

At the Commission's February meeting, Park returned with an action plan and requested that he be given one hundred eighty days to repair the structure. Although he did not have a contractor yet, he indicated he did have the funds available to complete the repairs and the one hundred-eighty day schedule was entirely possible to complete.

---

were missing; water heater, water closet, lavatory, and kitchen sink were missing; mechanical system was missing a heat source; interior walls were missing sheetrock; ceilings were missing boards and holes; floors were missing boards, holes, unlevel and no impervious material on bathroom floor; missing smoke detector; missing handrails for interior steps and stairs; loose boards on interior stairs; and accumulation of combustible materials in a vacant house.

3

Goesling and Conlin again testified at the hearing. Goesling presented the Commission with more recent pictures of the structure indicating no work had been undertaken to correct the deficiencies. She also expressed frustration with how long the deficiencies had existed. Conlin testified that the neighborhood association had assisted Park to obtain a historic designation for the property so he would qualify for tax incentives to offset repair costs. Both witnesses urged the Commission to act. Park did not question either Goesling or Conlin.

The Commission permitted Park ninety days to repair the structure, or until May 25th subject any requests for more time if necessary. The Commission indicated that, if at the end of the ninety days the house was not repaired, the Commission would hold a civil penalty hearing.

**June 23, 2008 Hearing**

At the June 23rd hearing, Park appeared before the Commission to request an additional one hundred eighty days to complete the repairs. When asked what work Park had done since he was granted the ninety days at the February meeting, Park responded that "I've done a lot, but I haven't done a lot on this house. It's that simple." Park also testified that, since the January 25th meeting, there had been little done to the house itself other than maintaining the outside of the property, i.e., mowing the grass, and "[t]here hasn't been much of anything done in the past two years."

The Commission subsequently heard testimony from Colin, Goesling and Mike Phipps. Colin testified to the duration of the Code violations and the general condition of the property---the presence of vagrants and vermin. Goesling testified Park had not

4

sought any permits to undertake the work he promised earlier. Phipps testified he first complained about the property nine years earlier when they tried to work with Park but nothing has been done. All three witnesses urged the Commission to take action. Park did not question any of the witnesses. At the conclusion of the hearing, the Commission denied Park's request for more time and informed him of his right to request an appeal of their ruling to the Appeals Board within thirty days.

### July 24, 2008 Appeals Board Hearing

At the Appeals Board hearing, Park testified that he had entered into a verbal sales contract with a potential buyer for the property who was aware of its deficiencies and was going to bring the property up to Code. In addition, he also indicated that he had only known the man several weeks, spoke to him over the phone, the man had not seen the property and there was no timeline on when the transaction would be closed.

Conlin testified as to the structure's disrepair and the present lack of any permits to begin repairs. Phipps testified to the general lack of repairs to the property over the past ten years. Louis McBee testified that he has seen the property on a daily basis for the past six years and has never seen anyone on the property making repairs of any kind. All the witnesses urged the Appeals Board to uphold the Commission's decision not to grant a further extension. At the conclusion, the Appeals Board affirmed the Commission's decision. Park was informed of his right to appeal the decision to district court.

**July 28, 2008 Hearing**

A civil penalty hearing was held the morning of July 28 wherein the Commission assumed Park was absent but with notice that the hearing was scheduled for the morning. Goesling asked the court to make any fines high to send Park a message. Colin opined that Park had no intention to repair the house as evidenced by the length of the proceedings and stated she had no new evidence. McBee urged the Commission to act as aggressively as possible and expressed some confusion with the administrative process. At the conclusion of the evidence, the staff recommended a civil penalty of $100 per day for 64 days or $6400. In support of the fine, the Commission members considered the considerable length of time the matter was pending with no progress, Park's broken promises to make the repairs, the time spent by the neighbors and neighborhood association coming to administrative meetings and hearings, and approved a fine of $300 per day for 64 days or $19,200.

In the afternoon, a hearing on the structure was re-opened on the motion of the Commission. Chairman Tinsley made the following statement:

> Before we get started, we heard testimony this morning on this case from interested parties, and then we found out that Mr. Park's notification to be here was 1 o'clock. So, in all fairness to Mr. Park, the---if the Commissioners would disregard any testimony they heard from interested parties this morning and just base it upon the evidence that we have here at hand at this particular time, which would be Mr. Park and anybody else's testimony that comes before us right now, in addition to any evidence that we have been presented by the staff.

The issue at the hearing was whether any civil penalties would be assessed for the noncompletion of the action plan submitted by Park in February. At the hearing,

6

Park designated Ron Dabelow as his spokesperson. Dabelow requested a sixty day extension to consummate a sale of the property from Park to John Brewer. He indicated there was a verbal telephonic agreement although Brewer had not seen the property. Dabelow informed the Commission that Brewer intended to rehabilitate the property and bring it up to Code. He could not give the Commission a time frame for the property's sale or its rehabilitation, nor did he know anything about Brewer's credit status. He did testify that, if he was unable to complete the contract, they would look for another buyer.

Dabelow further testified Park had since 1996 to resolve the issues before the Commission and had not complied with the Commission's prior orders. Park testified that the property had not been up to Code in nine and one half years of his ownership. The City's staff again recommended a civil penalty of $100 a day for 64 days or $6400. Based upon the lack of improvement in the property's condition over a lengthy period of time, the egregious nature of the case, the uncertainty of any sale to Brewer, and Park's broken promises, the Commission fined Park $300 a day for 64 days or $19,200, and informed him of his right to appeal his case to the Fort Worth Appeals Board within 30 days. It is undisputed that Park did not appeal the Commission's order imposing civil monetary penalties.[4]

---

[4]"If no appeals are taken from the decision of the commission panel within the required period, the decision of the commission panel is, in all things, final and binding." Tex. Loc. Gov't Code Ann. § 54.039 (West 2008). Further, "[a] hearing before the appeals board shall exhaust the administrative remedies of the property owner . . . under this article." Fort Worth, Tex., Minimum Building Standards Code § 7-107(j) (2003).

7

In 2009, the City filed its original and first amended petitions seeking an injunction requiring Park's compliance with the Minimum Standards Building Code and recovery of the civil penalties assessed by the Commission, interest and additional penalties together with interest thereon. In February 2010, Park filed a motion for summary judgment and, in March, the trial court granted his motion without stating its grounds for judgment. This appeal followed.

## Discussion

The City asserts the trial court erred in granting summary judgment in Park's favor because (1) Park's summary judgment motion was an impermissible collateral attack on the City's order imposing civil penalties and (2) even if Park's collateral attack were considered a timely direct attack on the civil money penalties, Park failed to prove the elements of his constitutional challenges as a matter of law. Because the City's second issue is dispositive, we will consider it first.

### Standard of Review

We review the trial court's summary judgment *de novo. Provident Life and Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003) (citing *FM Props. Operating Co. v. City of* Austin, 22 S.W.3d 868, 872 (Tex. 2000)). Summary judgment is appropriate when there is no genuine issue as to any material fact and judgment should be granted in favor of the movant as a matter of law. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2003) (citing *KPMG Peat Marwick v.*

*Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999)). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Id.*; *Rhone-Poulenc, Inc.*, 997 S.W.2d 217, 222-23 (Tex. 1999). To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex. 1996) (*per curiam).*

In reviewing a trial court's summary judgment, we resolve all doubts against the movant, and we view the evidence in the light most favorable to the nonmovants. *Shah v. Moss,* 67 S.W.3d 836, 842 (Tex. 2001). Additionally, in determining whether a disputed material fact issue exists, we take as true evidence favorable to the nonmovant. *Id.* (citing *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997)). If a trial court's order granting summary judgment does not specify the basis for the trial court's ruling, the summary judgment will be affirmed if any of the theories advanced by the movant are meritorious. *Joe v. Two Thirty Nine JV,* 145 S.W.3d 150, 157 (Tex. 2004).

**Due Process --- Adequate Notice and Right to Confrontation**

In administrative proceedings, due process requires that parties be afforded a full and fair hearing on disputed fact issues. *City of Corpus Christi v. Public Utility Commission of Texas*, 51 S.W.3d 231, 262 (Tex. 2000) (citing *Richardson v. City of*

*Pasadena*, 513 S.W.2d 1, 3 (Tex. 1974)).[5]  This includes the requirement that litigants receive notice and an opportunity to be heard at a meaningful time and in a meaningful manner.  *University of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

The right to cross examine adverse witnesses and to examine and rebut all evidence also applies to administrative hearings.  *Rector v. Texas Alcoholic Beverage Commission*, 599 S.W.2d 800, (Tex. 1980).  *See City of Corpus Christi*, 51 S.W.3d at 263 (an agency's procedures may violate a litigant's right to confront witnesses if a denial of due process prejudices a litigant's substantial rights); *Texas Health Facilities Commission v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446, 454 (Tex. 1984) (an agency's decision may be arbitrary and capricious if a denial of due process has resulted in prejudice of a litigant's substantial rights).

Park's sworn affidavit in support of his motion and exhibits indicate that he was notified to appear for the July 28, 2008, civil penalty hearing at 1:00 p.m.  When he arrived at the hearing room at the appointed time, he was informed that a hearing on civil money penalties had taken place that morning, in his absence, and several witnesses had testified.

---

[5]*See* Tex. Const. art. I, § 19; U.S. Const. amend. XIV, § 1.  The due process clause in our state constitution requires the same level of due process as the federal constitution.  *University of Texas Med. Sch. at Houston v.* Than, 901 S.W.2d 926, 929 (Tex. 1995).

In response, the City filed the affidavit of Sarah Ireland, an Administrative Technician for the Code Compliance Department of the City of Fort Worth, as well as complete transcripts of the proceedings described earlier in this opinion. Ireland's affidavit indicates Park had originally been sent a notice indicating the civil penalty hearing would take place on July 28 in the morning but, due to a clerical error, a subsequent reminder notice indicated the hearing was to take place on July 28 in the afternoon.

In the afternoon, the Commission acknowledged their error and re-opened the hearing. Prior to taking any evidence, the Chairman instructed the remaining Commissioners to disregard all testimony heard in the morning hearing and base their decision on the evidence presented in the afternoon hearing including Park's testimony, anyone else's testimony and evidence presented by the staff. The hearing then proceeded without objection and in the same manner as the morning hearing but without the participation of the witnesses that testified earlier. Park fully participated through his spokesperson who presented evidence on Park's sole defense or contention, i.e., an oral agreement had been made to sell the property and the prospective owner had agreed to bring the property up to Code. As in previous hearings, Park did not contest the property's deficiencies, their duration, his failure to meet prior deadlines or whether he had violated prior Commission rulings. Park and his spokesperson were permitted to speak, testify and ask questions. When asked by the Chairman at the hearing's conclusion whether there was anything else they wanted to add, Park's spokesperson responded: "No, we just appreciate your time."

11

Interpreting the evidence in favor of the nonmovant, Park has failed to prove as a matter of law that he is entitled to summary judgment on his due process issues of inadequate notice and right to confrontation because fact issues remain, i.e., whether notice was inadequate despite Park's full participation in the afternoon hearing,[6] whether Park waived any alleged due process violations by not objecting during the afternoon hearing,[7] whether there is evidence that the Chairman's admonition was insufficient to limit the Commission's decision-making to the evidence presented in the afternoon hearing[8] and, if so, whether Park can establish any harm or prejudice to his substantial rights by not being able to cross-examine the witnesses who testified at the morning hearing.[9] For these reasons, we must find that the trial court erred in granting Park's motion for summary judgment.

Accordingly, the City's second issue is sustained and its first issue is pretermitted. *See* Tex. R. App. P. 47.1.

---

[6]*See Dunn v. Bank-Tec South*, 134 S.W.3d 315, 321 (Tex.App.--Amarillo 2003, no pet.) (concluding trial court did not violate due process rights of a party given inadequate notice of summary judgment hearing where party attended and participated in summary judgment hearing).

[7]*See Balkum v. Tex. Dept. of Public Safety,* 33 S.W.3d 263, 266-67 (Tex.App.--El Paso 2000, no pet.) (concluding litigant waived any complaint pertaining to Sixth Amendment's right of confrontation when litigant did not raise the due process issue in the administrative hearing).

[8]*See Walker v. Tex. Employers' Ins. Ass'n,* 155 Tex. 617, 291 S.W.2d 298, 302 (1956) (jury presumed to have obeyed the trial court's instruction and disregarded testimony); *State v. Harrison,* 97 S.W.3d 810, 817 (Tex.App.--Texarkana 2003, no pet.) (jury presumed to have obeyed trial court's admonition limiting its consideration of testimony).

[9]*See City of Corpus Christi*, 51 S.W.3d at 262-63 (right to confrontation not denied during administrative hearing where litigants "failed to explain what evidence they would have adduced that is pertinent to a material disputed fact issue had they been given more time to . . . present evidence, or cross-examine witnesses").

## Conclusion

The trial court's judgment is reversed and this cause is remanded for proceedings consistent with this opinion.

Patrick A. Pirtle
Justice