NO. 07-10-0279-CV

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL C

 JULY 26, 2011

 CITY OF FORT WORTH, TEXAS, APPELLANT

 v.

 JAMES F. PARK, APPELLEE

 FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY;

 NO. 096-236731-09; HONORABLE JEFF WALKER, JUDGE

Before QUINN, C.J., PIRTLE, J., and BOYD, S.J.[1]

 MEMORANDUM OPINION

 Appellant, City of Fort Worth, appeals from entry of summary
judgment in favor of Appellee, James F. Park, in the City's action
seeking to enforce a prior order by the City's Building Standards
Commission ("Commission") assessing civil money penalties for
violations of the City's Minimum Building Standards Code ("Code") and
an injunction requiring Code compliance.[2] In support, the City
asserts the trial court erred in granting summary judgment in Park's
favor because (1) Park's summary judgment motion was an impermissible
collateral attack on the City's order imposing civil penalties and (2)
even if Park's collateral attack were considered a timely direct
attack on the civil money penalties, Park failed to prove the elements
of his constitutional challenges as a matter of law. We reverse and
remand for proceedings consistent with this opinion.

 Background

 Park owns a single family house located at 2317 Oakland
Boulevard in Fort Worth, Texas (property). This house is not his
homestead. Park lives elsewhere in Arlington, Texas. Since March 21,
1996, Park has received numerous notices from the Commission requiring
his compliance with the Code but has not taken any corrective action.

 January 28, 2008 Hearing

 On January 28, 2008, the Commission held a hearing on the
property's deficiencies.[3] Park appeared at the hearing and did not
dispute the deficiencies. He asked the Commission to defer ruling so
that he could develop a plan for correcting the deficiencies. Park
indicated that he was leasing land for oil and gas purposes and would
soon have the money to undertake repairs.

 Two neighbors appeared before the Commission: Gigi Goesling and
Wanda Conlin. They testified that the house had been falling down and
in disrepair for ten years. Aside from presenting an eyesore,
Goesling indicated vagrants were living in the house and outdoor
scaffolding was a safety hazard for children playing in and around the
house. Goesling and Colin urged the Commission to take action. Park
did not question the neighbors. The Commission gave Park seven days
to remove the scaffolding, thirty days to return with a plan of action
and continued the case until their meeting in February.

 February 25, 2008 Meeting

 At the Commission's February meeting, Park returned with an
action plan and requested that he be given one hundred eighty days to
repair the structure. Although he did not have a contractor yet, he
indicated he did have the funds available to complete the repairs and
the one hundred-eighty day schedule was entirely possible to complete.

 Goesling and Conlin again testified at the hearing. Goesling
presented the Commission with more recent pictures of the structure
indicating no work had been undertaken to correct the deficiencies.
She also expressed frustration with how long the deficiencies had
existed. Conlin testified that the neighborhood association had
assisted Park to obtain a historic designation for the property so he
would qualify for tax incentives to offset repair costs. Both
witnesses urged the Commission to act. Park did not question either
Goesling or Conlin.

 The Commission permitted Park ninety days to repair the
structure, or until May 25th subject any requests for more time if
necessary. The Commission indicated that, if at the end of the ninety
days the house was not repaired, the Commission would hold a civil
penalty hearing.

 June 23, 2008 Hearing

 At the June 23rd hearing, Park appeared before the Commission to
request an additional one hundred eighty days to complete the repairs.
 When asked what work Park had done since he was granted the ninety
days at the February meeting, Park responded that "I've done a lot,
but I haven't done a lot on this house. It's that simple." Park also
testified that, since the January 25th meeting, there had been little
done to the house itself other than maintaining the outside of the
property, i.e., mowing the grass, and "[t]here hasn't been much of
anything done in the past two years."

 The Commission subsequently heard testimony from Colin, Goesling
and Mike Phipps. Colin testified to the duration of the Code
violations and the general condition of the property---the presence of
vagrants and vermin. Goesling testified Park had not sought any
permits to undertake the work he promised earlier. Phipps testified
he first complained about the property nine years earlier when they
tried to work with Park but nothing has been done. All three
witnesses urged the Commission to take action. Park did not question
any of the witnesses. At the conclusion of the hearing, the
Commission denied Park’s request for more time and informed him of his
right to request an appeal of their ruling to the Appeals Board within
thirty days.

 July 24, 2008 Appeals Board Hearing

 At the Appeals Board hearing, Park testified that he had entered
into a verbal sales contract with a potential buyer for the property
who was aware of its deficiencies and was going to bring the property
up to Code. In addition, he also indicated that he had only known the
man several weeks, spoke to him over the phone, the man had not seen
the property and there was no timeline on when the transaction would
be closed.

 Conlin testified as to the structure's disrepair and the present
lack of any permits to begin repairs. Phipps testified to the general
lack of repairs to the property over the past ten years. Louis McBee
testified that he has seen the property on a daily basis for the past
six years and has never seen anyone on the property making repairs of
any kind. All the witnesses urged the Appeals Board to uphold the
Commission's decision not to grant a further extension. At the
conclusion, the Appeals Board affirmed the Commission's decision.
Park was informed of his right to appeal the decision to district
court.

 July 28, 2008 Hearing

 A civil penalty hearing was held the morning of July 28 wherein
the Commission assumed Park was absent but with notice that the
hearing was scheduled for the morning. Goesling asked the court to
make any fines high to send Park a message. Colin opined that Park
had no intention to repair the house as evidenced by the length of the
proceedings and stated she had no new evidence. McBee urged the
Commission to act as aggressively as possible and expressed some
confusion with the administrative process. At the conclusion of the
evidence, the staff recommended a civil penalty of $100 per day for 64
days or $6400. In support of the fine, the Commission members
considered the considerable length of time the matter was pending with
no progress, Park’s broken promises to make the repairs, the time
spent by the neighbors and neighborhood association coming to
administrative meetings and hearings, and approved a fine of $300 per
day for 64 days or $19,200.

 In the afternoon, a hearing on the structure was re-opened on
the motion of the Commission. Chairman Tinsley made the following
statement:

 Before we get started, we heard testimony this morning on this
 case from interested parties, and then we found out that Mr.
 Park's notification to be here was 1 o'clock. So, in all
 fairness to Mr. Park, the---if the Commissioners would disregard
 any testimony they heard from interested parties this morning and
 just base it upon the evidence that we have here at hand at this
 particular time, which would be Mr. Park and anybody else's
 testimony that comes before us right now, in addition to any
 evidence that we have been presented by the staff.

 The issue at the hearing was whether any civil penalties would
be assessed for the noncompletion of the action plan submitted by Park
in February. At the hearing, Park designated Ron Dabelow as his
spokesperson. Dabelow requested a sixty day extension to consummate a
sale of the property from Park to John Brewer. He indicated there was
a verbal telephonic agreement although Brewer had not seen the
property. Dabelow informed the Commission that Brewer intended to
rehabilitate the property and bring it up to Code. He could not give
the Commission a time frame for the property's sale or its
rehabilitation, nor did he know anything about Brewer's credit status.
 He did testify that, if he was unable to complete the contract, they
would look for another buyer.

 Dabelow further testified Park had since 1996 to resolve the
issues before the Commission and had not complied with the
Commission's prior orders. Park testified that the property had not
been up to Code in nine and one half years of his ownership. The
City's staff again recommended a civil penalty of $100 a day for 64
days or $6400. Based upon the lack of improvement in the property's
condition over a lengthy period of time, the egregious nature of the
case, the uncertainty of any sale to Brewer, and Park’s broken
promises, the Commission fined Park $300 a day for 64 days or $19,200,
and informed him of his right to appeal his case to the Fort Worth
Appeals Board within 30 days. It is undisputed that Park did not
appeal the Commission's order imposing civil monetary penalties.[4]

 In 2009, the City filed its original and first amended petitions
seeking an injunction requiring Park's compliance with the Minimum
Standards Building Code and recovery of the civil penalties assessed
by the Commission, interest and additional penalties together with
interest thereon. In February 2010, Park filed a motion for summary
judgment and, in March, the trial court granted his motion without
stating its grounds for judgment. This appeal followed.

 Discussion

 The City asserts the trial court erred in granting summary
judgment in Park’s favor because (1) Park's summary judgment motion
was an impermissible collateral attack on the City's order imposing
civil penalties and (2) even if Park’s collateral attack were
considered a timely direct attack on the civil money penalties, Park
failed to prove the elements of his constitutional challenges as a
matter of law. Because the City's second issue is dispositive, we
will consider it first.

 Standard of Review

 We review the trial court's summary judgment de novo. Provident
Life and Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003)
(citing FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872
(Tex. 2000)). Summary judgment is appropriate when there is no
genuine issue as to any material fact and judgment should be granted
in favor of the movant as a matter of law. Diversicare General
Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2003) (citing KPMG
Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748
(Tex. 1999)). A defendant is entitled to summary judgment on an
affirmative defense if the defendant conclusively proves all the
elements of the affirmative defense. Id.; Rhone-Poulenc, Inc., 997
S.W.2d 217, 222-23 (Tex. 1999). To accomplish this, the defendant-
movant must present summary judgment evidence that establishes each
element of the affirmative defense as a matter of law. Ryland Group,
Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996) (per curiam).

 In reviewing a trial court's summary judgment, we resolve all
doubts against the movant, and we view the evidence in the light most
favorable to the nonmovants. Shah v. Moss, 67 S.W.3d 836, 842 (Tex.
2001). Additionally, in determining whether a disputed material fact
issue exists, we take as true evidence favorable to the nonmovant.
Id. (citing American Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420,
425 (Tex. 1997)). If a trial court's order granting summary judgment
does not specify the basis for the trial court's ruling, the summary
judgment will be affirmed if any of the theories advanced by the
movant are meritorious. Joe v. Two Thirty Nine JV, 145 S.W.3d 150,
157 (Tex. 2004).

 Due Process --- Adequate Notice and Right to Confrontation

 In administrative proceedings, due process requires that parties
be afforded a full and fair hearing on disputed fact issues. City of
Corpus Christi v. Public Utility Commission of Texas, 51 S.W.3d 231,
262 (Tex. 2000) (citing Richardson v. City of Pasadena, 513 S.W.2d 1,
3 (Tex. 1974)).[5] This includes the requirement that litigants
receive notice and an opportunity to be heard at a meaningful time and
in a meaningful manner. University of Tex. Med. Sch. at Houston v.
Than, 901 S.W.2d 926, 930 (Tex. 1995) (citing Mathews v. Eldridge, 424
U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

 The right to cross examine adverse witnesses and to examine and
rebut all evidence also applies to administrative hearings. Rector v.
Texas Alcoholic Beverage Commission, 599 S.W.2d 800, (Tex. 1980). See
City of Corpus Christi, 51 S.W.3d at 263 (an agency's procedures may
violate a litigant's right to confront witnesses if a denial of due
process prejudices a litigant's substantial rights); Texas Health
Facilities Commission v. Charter Medical-Dallas, Inc., 665 S.W.2d 446,
454 (Tex. 1984) (an agency's decision may be arbitrary and capricious
if a denial of due process has resulted in prejudice of a litigant's
substantial rights).

 Park’s sworn affidavit in support of his motion and exhibits
indicate that he was notified to appear for the July 28, 2008, civil
penalty hearing at 1:00 p.m. When he arrived at the hearing room at
the appointed time, he was informed that a hearing on civil money
penalties had taken place that morning, in his absence, and several
witnesses had testified.

 In response, the City filed the affidavit of Sarah Ireland, an
Administrative Technician for the Code Compliance Department of the
City of Fort Worth, as well as complete transcripts of the proceedings
described earlier in this opinion. Ireland's affidavit indicates Park
had originally been sent a notice indicating the civil penalty hearing
would take place on July 28 in the morning but, due to a clerical
error, a subsequent reminder notice indicated the hearing was to take
place on July 28 in the afternoon.

 In the afternoon, the Commission acknowledged their error and re-
opened the hearing. Prior to taking any evidence, the Chairman
instructed the remaining Commissioners to disregard all testimony
heard in the morning hearing and base their decision on the evidence
presented in the afternoon hearing including Park’s testimony, anyone
else's testimony and evidence presented by the staff. The hearing
then proceeded without objection and in the same manner as the morning
hearing but without the participation of the witnesses that testified
earlier. Park fully participated through his spokesperson who
presented evidence on Park’s sole defense or contention, i.e., an oral
agreement had been made to sell the property and the prospective owner
had agreed to bring the property up to Code. As in previous hearings,
Park did not contest the property's deficiencies, their duration, his
failure to meet prior deadlines or whether he had violated prior
Commission rulings. Park and his spokesperson were permitted to
speak, testify and ask questions. When asked by the Chairman at the
hearing's conclusion whether there was anything else they wanted to
add, Park’s spokesperson responded: "No, we just appreciate your
time."

 Interpreting the evidence in favor of the nonmovant, Park has
failed to prove as a matter of law that he is entitled to summary
judgment on his due process issues of inadequate notice and right to
confrontation because fact issues remain, i.e., whether notice was
inadequate despite Park’s full participation in the afternoon
hearing,[6] whether Park waived any alleged due process violations by
not objecting during the afternoon hearing,[7] whether there is
evidence that the Chairman's admonition was insufficient to limit the
Commission's decision-making to the evidence presented in the
afternoon hearing[8] and, if so, whether Park can establish any harm
or prejudice to his substantial rights by not being able to cross-
examine the witnesses who testified at the morning hearing.[9] For
these reasons, we must find that the trial court erred in granting
Park’s motion for summary judgment.

 Accordingly, the City's second issue is sustained and its first
issue is pretermitted. See Tex. R. App. P. 47.1.

 Conclusion

 The trial court's judgment is reversed and this cause is
remanded for proceedings consistent with this opinion.

 Patrick A. Pirtle
 Justice

-----------------------
[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals,
sitting by assignment. Tex. Gov(t Code Ann. ( 75.002(a)(1) (West
2005).

[2]Originally appealed to the 2nd Court of Appeals, this case was
transferred to this Court by the Texas Supreme Court pursuant to its
docket equalization efforts. See Tex. Gov(t Code Ann. ( 73.001 (West
2005). We are unaware of any conflict between precedent of the 2nd
Court of Appeals and that of this Court on any relevant issue. See
Tex. R. App. P. 41.3.

[3]An inspection performed by the Commission on January 10, 2008,
pursuant to an administrative search warrant identified the following
deficiencies in the exterior: the exterior walls exhibited missing
boards, roof was loose, faulty weather protection; roof with rotten
wood on the overhang and shingles that were deteriorated; foundation
access cover was missing; windows had broken glass, missing screens
and rotting wood; doors were missing, damaged, a poor fit and missing
doorknobs; porches had lost brick at the support post and a trip
hazard; the electrical service had exposed wiring, the steps were
missing at the rear and side and large cracks in the front steps. An
inspection of the interior identified the following deficiencies: the
electrical system had exposed wiring; a bathtub was missing and
damaged; faucets were missing; water heater, water closet, lavatory,
and kitchen sink were missing; mechanical system was missing a heat
source; interior walls were missing sheetrock; ceilings were missing
boards and holes; floors were missing boards, holes, unlevel and no
impervious material on bathroom floor; missing smoke detector; missing
handrails for interior steps and stairs; loose boards on interior
stairs; and accumulation of combustible materials in a vacant house.

[4]"If no appeals are taken from the decision of the commission panel
within the required period, the decision of the commission panel is,
in all things, final and binding." Tex. Loc. Gov't Code Ann. § 54.039
(West 2008). Further, "[a] hearing before the appeals board shall
exhaust the administrative remedies of the property owner . . . under
this article." Fort Worth, Tex., Minimum Building Standards Code § 7-
107(j) (2003).

[5]See Tex. Const. art. I, § 19; U.S. Const. amend. XIV, § 1. The due
process clause in our state constitution requires the same level of
due process as the federal constitution. University of Texas Med.
Sch. at Houston v. Than, 901 S.W.2d 926, 929 (Tex. 1995).

[6]See Dunn v. Bank-Tec South, 134 S.W.3d 315, 321 (Tex.App.--Amarillo
2003, no pet.) (concluding trial court did not violate due process
rights of a party given inadequate notice of summary judgment hearing
where party attended and participated in summary judgment hearing).

[7]See Balkum v. Tex. Dept. of Public Safety, 33 S.W.3d 263, 266-67
(Tex.App.--El Paso 2000, no pet.) (concluding litigant waived any
complaint pertaining to Sixth Amendment's right of confrontation when
litigant did not raise the due process issue in the administrative
hearing).

[8]See Walker v. Tex. Employers' Ins. Ass'n, 155 Tex. 617, 291 S.W.2d
298, 302 (1956) (jury presumed to have obeyed the trial court's
instruction and disregarded testimony); State v. Harrison, 97 S.W.3d
810, 817 (Tex.App.--Texarkana 2003, no pet.) (jury presumed to have
obeyed trial court's admonition limiting its consideration of
testimony).

[9]See City of Corpus Christi, 51 S.W.3d at 262-63 (right to
confrontation not denied during administrative hearing where litigants
"failed to explain what evidence they would have adduced that is
pertinent to a material disputed fact issue had they been given more
time to . . . present evidence, or cross-examine witnesses").